Barbara **SALAZAR**, Plaintiff

v.

**MARATHON OIL COMPANY**,
**Defendant.**

Civ. A. No. G–78–3.

United States District Court,
S. D. Texas,
Galveston Division.

Dec. 10, 1980.

---

Andres P. Chaumont and James L. Garcia, Houston, Tex., for plaintiff.

Raymond L. Kalmans, Neel, Hooper & Kalmans, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HUGH GIBSON, District Judge.

### I. *INTRODUCTION*

Plaintiff Barbara Salazar brought this suit against the defendant, Marathon Oil Company, for alleged violations of the Equal Pay Amendments to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Mrs. Salazar alleges that for a period of approximately one year's time she performed a job function substantially equal to one previously performed by male counterparts and received compensation at roughly one–half the rate of her male predecessors. Defendant Marathon Oil Company (hereinafter "Marathon") claims that the job performed by plaintiff was not substantially equal to that performed by male employees with whom plaintiff seeks to compare herself. Alternatively, Marathon claims that any disparity in compensation was based upon factors other than sex; specifically, that those male employees with whom plaintiff seeks comparison were long–term employees, who because of impaired health, could no longer work in their assigned job functions and were demoted into a specially created position with an artificially high pay range in consideration for their long–term company service.

This cause was tried to the Court without a jury. Having heard the evidence and reviewed the briefs filed on behalf of both parties, the Court is of the opinion that judgment must be entered for the defendant.

### II. *FINDINGS OF FACT*

1. Plaintiff Barbara Salazar is an adult female citizen of the United States of America and a resident of the State of Texas.

2. Defendant Marathon is a corporation qualified to do business in the State of Texas where it maintains a refinery and related facilities in Texas City, Texas. Defendant purchased the above–mentioned facilities from Plymouth Oil Co. on or about April 1, 1962 and credited employees retained with prior service.

3. At all times material to this suit plaintiff was employed by the defendant at its Texas City, Texas refinery within the jurisdiction of this Court.

4. At all times material to this suit defendant has had two or more employees engaged in the production of goods for commerce, and the annual volume of business has exceeded $250,000.00.

5. Mrs. Salazar was first employed by Marathon on or about November 7, 1975 as a steno clerk, a pay range 7 position, at a salary of $579.00 per month. Plaintiff's initial job duties as a steno clerk included typing, filing and answering the telephone. Plaintiff continued to be classified as a steno clerk until on or about June 30, 1978. While classified as a steno clerk, plaintiff was paid the following monthly salaries:

| | |
|---|---|
| November 7, 1975 | $579 |
| January 1, 1976 | 620 |
| November 1, 1976 | 651 |
| January 1, 1977 | 690 |
| January 1, 1978 | 766 |

(Deft. Exh. 1).

6. On or about September 12, 1966 Marathon created the position of "Maintenance Dispatcher," and designated it a pay range 23 position. The position of maintenance dispatcher was created for a Mr. Alvin Loeckle whose seniority with Marathon dated back to 1938. Prior to assuming the duties of maintenance dispatcher in 1966, Mr. Loeckle was a warehouse foreman. Marathon was in the process of computerizing their Texas City warehouse in 1966 and Mr. Loeckle was unfamiliar with computer systems. In deference to Mr. Loeckle's long-term employment a new job function was tailored for him rather than terminate him for an inability to continue as warehouse foreman. This function was classified as "Maintenance Dispatcher" and its duties included: keeping time records for the maintenance department; scheduling trucks and equipment for service; and supervising some maintenance janitorial personnel. Mr. Loeckle estimated that the timekeeping duties consumed approximately 20% of his actual work time.

7. Mr. Loeckle's change in job classification from warehouse foreman to maintenance dispatcher was considered a demotion, and Loeckle's pay grade was reduced from a range 25 to a range 23 (a pay reduction of approximately $75.00 per month). Loeckle remained classified as a maintenance dispatcher until he retired in October of 1974. While classified as a maintenance dispatcher from 1966 until 1974, Mr. Loeckle's monthly salary range was as follows:

| | |
|---|---|
| October 1, 1966 | $   728.00 |
| January 1, 1967 | 764.00 |
| January 1, 1968 | 801.00 |
| January 1, 1969 | 891.00 |
| January 1, 1970 | 979.00 |
| January 1, 1971 | 1,057.00 |
| January 1, 1972 | 1,136.00 |
| January 1, 1973 | 1,198.00 |
| January 1, 1974 | 1,270.00 |
| June 1, 1974 | 1,346.00 |

(Deft. Exh. 11).

1. *See* Plaintiffs' Exhibit 1.

8. Mr. Ausby Clements' service record with Marathon dates back to July 1945. From October 1968 until September 1974 Mr. Clements was employed as a "Machinist Foreman" in defendant's Texas City, Texas refinery. In mid-1974 Mr. Clements became unable to fully discharge his duties as a machinist foreman because of failing health. Work restrictions imposed by Mr. Clements' physican precluded certain activities and overtime work which were essential to his continued role as a machinist foreman. Mr. Clements' situation (a long-term employee no longer capable of continuing in his assigned job function for reasons beyond his control) was viewed by Marathon as comparable to that of Mr. Loeckle's which precipitated the creation of the maintenance dispatcher classification. With Mr. Loeckle's upcoming retirement, the decision was made to move Mr. Clements into the job of maintenance dispatcher out of deference to his long-term service record with the company.

9. Mr. Clements' change in job classification from a machinist foreman to a maintenance dispatcher was considered a demotion, and Clements' pay grade was reduced from a range 27 to a range 23 (a pay reduction of approximately $152.00 per month). While classified as a maintenance dispatcher, Mr. Clements' monthly pay range was as follows:

| | |
|---|---|
| September 1, 1974 | $1,486.00 |
| December 16, 1974 | 1,605.00 |
| January 1, 1976 | 1,717.00 |
| January 1, 1977 | 1,820.00 |

(Deft. Exh. 12).

10. Mr. Clements' testimony was clear that regardless of the responsibilities outlined in a job description for the position of maintenance dispatcher,[1] his primary functions while he held that classification were one of a timekeeper. Mr. Clements considered himself a timekeeper, and was confident enough in his perception of his job function that he signed his own time card with the classification of "timekeeper."[2]

2. Marathon management personnel testified that Marathon had no official job classification as "timekeeper."

11. The timekeeping functions were expanded when Mr. Clements assumed the role of maintenance dispatcher. In addition to keeping time records for the maintenance department (as Mr. Loeckle had), Clements also kept time records for the machinists, warehouse personnel and electrical and instrument department. Keeping time records included filling out employees' daily time sheets, vacation schedules, manpower sheets, overtime calculations and absentee reports. Mr. Clements estimated that on Mondays and Fridays his entire work day was consumed by the timekeeping duties, with approximately five work hours devoted to timekeeping on Tuesdays, Wednesdays and Thursdays. Mr. Clements also testified that his duties as a timekeeper, which subsumed the majority of his work time, were in no way related to his past experience as a machinist foreman.

12. Clements spent those work hours that were not devoted to timekeeping performing other functions, some of which were related to his past experience as a machinist foreman. These other functions included: filing in as a machinist foreman; occasionally ordering parts for equipment; filling in as a scheduler; and giving advice based on his past experience as a machinist foreman. Mr. Clements was clear however, that his primary duty was timekeeping and he engaged in these "other" functions after his timekeeping responsibilities were completed.

13. Mr. Clements remained classified as a maintenance dispatcher until June of 1977 when he was transferred to the Planning and Scheduling section. During his tenure as maintenance dispatcher Clements trained Mrs. Salazar in the performance of his timekeeping duties. Mrs. Salazar occasionally helped Mr. Clements with the timekeeping and filled in for him when he was absent from work.

14. Dave Simon's work record with Marathon dates back to September 1947. From November 1970 until June 1977 Mr. Simon was employed as a machinist foreman. During 1976 Mr. Simon had open–heart surgery resulting in work restrictions that pro-

hibited him from continuing in his position as machinist foreman. In June of 1977 when Mr. Clements was transferred to the scheduling department, Mr. Simon was classified as the maintenance dispatcher. He was trained in the timekeeping duties by Mr. Clements and Mrs. Salazar.

15. Mr. Simon's change in job classification from a machinist foreman to a maintenance dispatcher was considered a demotion, and Simon's pay grade was reduced from a range 27 to a range 23. While classified as a maintenance dispatcher, Mr. Simon's monthly pay rate was as follows:

| | |
|---|---|
| June 16, 1977 | $1,649.00 |
| January 1, 1978 | 1,748.00 |
| January 1, 1979 | 1,835.00 |
| January 1, 1980 | 1,982.00 |

(Deft. Exh. 17).

16. Almost immediately upon being assigned as the maintenance dispatcher, Mr. Simon's physical condition worsened and he became unable to effectively utilize his hands for writing. This impairment of his hands precluded Mr. Simon from performing the timekeeping function of maintenance dispatcher that had been the primary job function when Mr. Clements had the job. Mr. Simon retained the classification of maintenance dispatcher but his work assignment was altered to accommodate his hand problem; he was assigned to supervise janitorial and pest control services.

17. Testimony from several Marathon management personnel was consistent in that a pay range 23 for the position of maintenance dispatcher as it was originally envisioned, and continued to be filled, was "artificially" high. The job classification was thought to be overpaid and specially tailored to accommodate each of the long–term personnel who was demoted into this position. The artificially high pay range was regarded as consideration for long–term employees who, through no fault of their own, could no longer continue in their assigned job function.

18. Mrs. Salazar was assigned the timekeeping function in mid–1977 when Mr. Simon became unable to perform the job. Mrs. Salazar estimated that she spent her

entire working day Mondays and Fridays on timekeeping and approximately five work hours on Tuesdays, Wednesdays and Thursdays timekeeping. Mrs. Salazar spent her remaining work hours performing such clerical duties as typing and filing. Mr. Clements' testimony was consistent with Mrs. Salazar's: that she assumed the position of "timekeeper" and performed those primary duties that Mr. Clements performed when he was the "timekeeper."

19. Mrs. Salazar's pay range in mid–1977 prior to her assuming the timekeeping duties was a range 7 ($690.00 per month) and her job classification was steno clerk. When Mrs. Salazar assumed the timekeeping duties upon her supervisor's request, her pay range remained a range 7 and her job classification remained steno clerk. Mrs. Salazar spoke to her supervisor, Mr. Raiford, about the disparity in salary that she was receiving compared to that received by Mr. Clements when he was performing the timekeeping function. Mr. Raiford's reply was that Marathon considered her timekeeping duties as clerical in nature and not outside her current job description of steno clerk. Further, she was informed that no pay–rate change would be forthcoming merely due to her assumption of timekeeping duties.

20. Mrs. Salazar continued keeping time from mid–1977 until July 1978 when she was promoted to the accounting department. With Mrs. Salazar's promotion, the timekeeping function was no longer vested in any single person; the responsibilities of time records were distributed among the various departments.

21. From time to time various Marathon employees "fill in" in a job description different from their own on a temporary basis with no adjustment to their monthly pay rate. These temporary assignments are usually when an employee is ill, on vacation or has been recently transferred and are most often for relatively short periods of time, although some were demonstrated to last several months. Mrs. Salazar performed the timekeeping function for one year and thereafter the job function was dispersed.

### III. CONCLUSIONS OF LAW

1. This case arises under the Equal Pay Act of 1963, 29 U.S.C. § 206(d) which added to the Fair Labor Standards Act of 1938 the principle of equal pay for equal work regardless of sex.

2. Defendant is a corporation qualified to do business in the State of Texas and is an enterprise engaged in commerce or in an industry affecting commerce within the meaning of 29 U.S.C. § 203(r).

3. The Equal Pay Act requires equal pay for equal work on jobs that require "equal skill, effort, and responsibility, and which are performed under similar work conditions ... " 29 U.S.C. § 206(d)(1) (1963). The burden of proof is upon the plaintiff to show that Marathon has violated the Act with disparate compensation for equal work. *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

4. Plaintiff need not show that the work she performed, and that performed by Mr. Clements were identical; only that they were substantially equal. *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041 (5th Cir. 1973). Marathon claims first, that the jobs performed by Clements and Mrs. Salazar were not substantially equal; that their job descriptions and titles were different; that Mr. Clements' job entailed additional tasks and a level of expertise acquired through his experience as a machinist foreman; and that Mr. Clements' job required extra efforts not expended by Mrs. Salazar.

5. Equality of work is to be judged by the actual work performance and not by job classification or title. *Brennan v. City Stores, Inc.,* 479 F.2d 235 (5th Cir. 1973). Therefore, it is not determinative that Mr. Clements was a maintenance dispatcher and Mrs. Salazar was a steno clerk, or that Marathon had no job classification of timekeeper. What is controlling is that once Mrs. Salazar assumed the timekeeping duties, her duties were essentially the same as Mr. Clements' had been: keeping time records.

6. Additionally, the crucial question is not if Mr. Clements possessed additional skill or training, but whether the nature of his duties as maintenance dispatcher required those additional skills. *See* 29 C.F.R. § 800.125; *Peltier v. City of Fargo*, 533 F.2d 374 (8th Cir. 1976); *Marshall v. Georgia Southwestern College*, 489 F.Supp. 1322 (M.D.Ga.1980). Mr. Clements' testimony was clear as was the cumulative evidence that his main duty as timekeeper was in no way dependent upon his past experience as a machinist foreman.

7. In reviewing equal pay claims, the Fifth Circuit has held that jobs are *not* "equal,"

> ... even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which 1) require extra effort, 2) consume a significant amount of time of all those whose pay differentials are to be justified in terms of them, and 3) are of an economic value commensurate with the pay differential.

*Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 725 (5th Cir. 1970). The preponderance of the evidence supports Mrs. Salazar's claim that she performed work equal to that performed by Mr. Clements. When Mrs. Salazar assumed the timekeeping duties, her role became essentially that which Mr. Clements had occupied. Both spent the vast majority of their work day performing the timekeeping duties. The additional tasks that Mr. Clements performed (see Findings No. 12) did not constitute a substantial portion of Mr. Clements' job responsibilities, nor did they consume a significant amount of his work time. Mr. Clements' own testimony was that these additional tasks were incidental and performed only when time permitted. The Court is convinced that once Mrs. Salazar assumed the timekeeping duties in mid–1977, she performed work substantially equal to that performed by Mr. Clements requiring equal skill, effort and responsibility at considerably less compensation, thus making a *prima facie* case under the Equal Pay Act. *Corning Glass Works v. Brennan*,

417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

8. Once the plaintiff has carried the burden of showing that the employer pays workers of one sex more than workers of the opposite sex for equal work, the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions. *Corning Glass Works v. Brennan, Id.* at 196–197, 94 S.Ct. at 2229. 29 U.S.C. § 206(d)(1) provides in pertinent part:

> No employer having employees subject to any provisions of this section, shall discriminate ... on the basis of sex ... except where such payment is made pursuant to (i) a seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any other factor other than sex.

The Court concludes that the preponderance of the evidence shows that the disparity in pay between Mrs. Salazar and Mr. Clements was a differential based on factors other than sex. The evidence was clear and consistent that the classification of maintenance dispatcher was created, and continued at an artificially high pay range, in consideration for longevity of service. That those long term employees of twenty years or more service who occupied the classification did so upon becoming unable to continue in their assigned job function, and were placed in the created position in lieu of discharge. Mrs. Salazar fits none of these controlling factors to qualify her for the consideration of an artificially high pay range.

9. Upon a finding that the defendant has discharged its duty of rebutting plaintiff's *prima facie* case, judgment will be entered accordingly for the defendant, Marathon Oil Company, and against the plaintiff, Barbara Salazar.