**Vera L. EDMONDSON, etc., Plaintiff,**

**v.**

**William SIMON, etc., et al., Defendants.**

**No. 76 C 4591.**

United States District Court,
N. D. Illinois, E. D.

Sept. 8, 1980.

---

Terry Yale Feiertag, Minsky, Lichtenstein & Feiertag, P. C., Chicago, Ill., for plaintiff.

Martin B. Lowery, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiff is a 57 year old black woman employed in the Examination Division of the Chicago District Office of the Internal Revenue Service ("IRS"). Except for the period next discussed, she has been a GS–9 pay level tax auditor since 1971. In 1975 she applied for lateral reassignment to the position of GS–9 revenue agent. Although the pay for that post is the same as for a GS–9 tax auditor, it offered her an opportunity for promotion to GS–11 revenue agent (unavailable to her as a tax auditor). Plaintiff was selected for a training program for the GS–9 revenue agent position but was then dismissed from the training program and reassigned to her former position as tax auditor (there is a dispute between the parties as to whether this was due to defendants' alleged bias or because of plaintiff's poor performance in the training program). This action was filed December 16, 1976.

Defendants have moved for summary judgment as to Count III of the Complaint,[1] which alleges a violation of the Equal Pay Act of 1963 (the "Act"), 29 U.S.C. § 206(d)(1):

(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

This action, including the fully–briefed pending motion, has been reassigned to this Court. For the reasons stated in this memorandum opinion and order, defendants' motion is granted.

One initial question posed by the parties is not decided by the Court: the validity and applicability of plaintiff's argument in its Memorandum in Opposition to Defendants' Motion To Dismiss 16–17:

If plaintiff is able to prove at trial that there is *significant disparity* in the assignment of males and females to the positions of Tax Auditor and Revenue Agent and that as a Tax Auditor she performed duties substantially equal to those performed by Revenue Agents but at an unequal rate of pay, she will be entitled to relief under the Equal Pay Act. [emphasis supplied]

It is clear that a *total* rejection of that proposition would permit the purposes of the Act to be frustrated by tokenism.[2]

---

1. Count I alleges a violation of Title VII of the Civil Rights Act of 1964, and Count II alleges a violation of the Age Discrimination in Employment Act of 1967.

2. In *Marshall v. Building Maintenance Corp.*, 587 F.2d 567 (2d Cir. 1978), the higher–paid category of "heavy duty" cleaners, numbering approximately 350 employees, included fewer

That concept of course can pose complex issues, but this Court's acceptance of defendants' other arguments makes it unnecessary to determine the question either in the abstract or as applied to the facts regarding GS–9 tax auditors and GS–11 revenue agents.

On the merits, plaintiff contends that the work she performs as a GS–9 tax auditor is "equal" to that performed by GS–11 revenue agents, but without equal compensation. Defendants respond that the GS–9 tax auditor position does not require the same "skill, effort and responsibility" as the GS–11 revenue agent position, nor is a tax auditor's work done under "similar working conditions," so that relief under the Act is unavailable.

■ Under the terms of the Act recovery must be predicated on the satisfaction of the four criteria relied on by defendants: The lower–paying position must require equal *skill, effort* and *responsibility* to that required in the higher–paying position, and must be performed under *similar working conditions*. Regulations promulgated under the Act state that equal skill, effort and responsibility "constitute three separate tests, each of which must be met in order for the equal pay standards to apply." 29 C.F.R. § 800.122(a); accord, *Christopher v. Iowa*, 559 F.2d 1135, 1138 n. 14 (8th Cir. 1977).

In addition, the courts have read the "equal work" language of the Act to impose a "threshold requirement, evident in the legislative history and confirmed in case law, that the jobs to be equated be substantially the same. The requirement of equality of job content inheres in the statutory term 'equal work.'" *Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164, 1173 (3d Cir. 1977). Plaintiff acknowledges her need to satisfy this standard as well as the four statutory tests already referred to.

■ Plaintiff's argument is at the core a Gertrude Stein assertion: A tax audit is a tax audit is a tax audit. As contemplated by Fed.R.Civ.P. 56, defendants have presented a comprehensive factual presentation through affidavits to demonstrate "that there is no genuine issue as to any material fact." Defendants' affidavits confirm the invalidity of plaintiff's simplistic arguments. They show in graphic form the differences between the two job positions, familiar to every practitioner who works in the tax field. We deal with each of the applicable criteria, though not in the order contained in the Act.

### Equal Work–Substantial Identity of Job Function

There is no question of the sharp distinctions in job content between the tax auditor and revenue agent jobs, distinctions described in the affidavit of Richard Schickel, a Branch Chief in what used to be termed the IRS Audit Division. Nor are those distinctions cosmetic, as plaintiff suggests. Returns Program Manager Leonard Lencioni's affidavit and the attached tables demonstrate that the separation of functions is neither general nor theoretical but both meaningful and real. Affidavits of plaintiff's supervisor, Louise Cobb, and the former Chief of the Stabilization Division, George Levin, establish that the differences in job content have been mirrored directly in plaintiff's own assignments. This Court adopts, without the necessity of repeating, the analysis at defendants' Memorandum 12–15. On this ground alone summary judgment for defendants is appropriate.

### Equal Effort

Defendants argue that the corporate and partnership returns that comprise a major part of the workload of revenue agents, but virtually none of that of tax auditors,[3] are

than 70 women. In contrast, the "light duty" cleaners comprised 399 females and only one male employee. Though the Court of Appeals affirmed the District Court's finding that the two groups did not perform equal work, the case illustrates the potential problems with an extreme application of defendants' argument.

3. Exhibit 5 B, the comparative tables attached to the Lencioni affidavit, shows the total contrast in this respect.

more complex. They point to the greater average amount of time required to audit such returns when compared to the auditing time on individual returns.[4] Moreover, the Lencioni affidavit establishes that among *individual* income tax returns a pre–assignment screening process is established to direct the returns with more complex problems to revenue agents for field audits, and more simple returns to tax auditors for office audit.[5]

■ Mental as well as physical exertion is part of the "effort" standard established by the Act. "Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job." 29 C.F.R. § 800.127. "[A]lmost as a matter of definition, a job which is more complex than another involves, for the average person, more mental effort to accomplish." *Dunlop v. General Electric Co.*, 401 F.Supp. 1353, 1361 (W.D.Va.1975).

In the Court's view defendants should prevail on the inequality of "effort" in the two positions, in the sense that term is employed in the Regulation and case law. But even if it were argued that the greater volume of returns reviewed by tax auditors makes the total "effort" equal, the same factors support a determination of the inequality of the "skill" factor discussed later in this opinion.

### Similar Working Conditions

Revenue agents conduct audits at the place of business of the taxpayer or taxpayer's representative, while tax auditors work entirely at the IRS office. This environmental distinction does not persuade the Court that a difference in "working conditions" exists in the legal sense. What it *does* reflect, however, are the differences in function that are both the cause and the effect of the different locations in which the audits occur, as stated in the Schickel affidavit:

2. The jobs performed by tax auditors and revenue agents differ markedly. The tax auditor's work is generally limited to audits of individual income tax returns; the tax auditor is not assigned corporate, partnership or fiduciary returns for audit. Most of the audits conducted by tax auditors involve interviews of individual taxpayers of [sic] their representatives who bring the relevant tax records into the IRS office for examination. Tax Auditors generally lack prior knowledge of the case, and the audits are usually limited in scope to specific issues or items which are presented for examination by the Returns Program Manager. The designated areas of examination are often limited to a determination of whether the taxpayer can produce sufficient records to substantiate the matters appearing on his return. Supervisory approval is normally required before the tax auditor can expand the scope of the audit beyond the identified area. In contrast, the revenue agent audits individual, corporate, partnership and fiduciary returns. With the exception of fraud cases, revenue agents conduct almost all of their audits at the place of business of the taxpayer or his representative. Unlike the tax auditor, the revenue agent himself determines the probable scope of his audit and formulates a comprehensive plan for the examination. As the audit develops, the revenue agent retains wide latitude in directing or changing the course of the examination and the scope of the investigation.

3. While the tax auditor's work is generally limited to individual tax returns and unsophisticated accounting systems, the revenue agent examines individual, corporate, partnership and fiduciary returns which exhibit a wide variety of complex accounting systems, business transactions and business relationships. The revenue agent's work concerns areas

---

4. These figures, also shown in Exhibit 5 B, reflect a difference of kind and not degree.

5. Again, Exhibit 5 B shows not only a sharp difference in the numbers of "business" as

against "non–business" individual returns dealt with by the two groups, but also in the pattern of income distribution and–most markedly–in the numbers of staff hours per return.

of tax law with which the tax auditor rarely, if ever, becomes involved. The broader variety and greater complexity of issues dealt with by the revenue agent demands a greater knowledge and more thorough understanding of the Internal Revenue Code, Treasury Regulations, tax law principles, audit techniques and accounting methods.

These differences too are critical to the lack of "equal skill" discussed later.

### Equal Responsibility

"Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 800.129. Defendants put the proposition that "within the context of the IRS audit function, the obvious yardstick of job importance and responsibility is the amount of money which is at issue in the audits and which might result in additional tax assessments." Exhibit 5 B reflects not only the far greater absolute dollars in taxes and penalties assessed by revenue agents (over $283 million) than those assessed by tax auditors (over $22 million) but the fact that revenue agent audits produce an average assessment of $8,252, in contrast to the comparable figure of $390 in tax auditors' audits.

In addition, the contrast described in the Schickel affidavit quoted in the preceding section of this memorandum reflects an inequality of responsibility in the ordinary sense of that term. This Court finds the differences between the two positions in overall terms of responsibility both obvious and meaningful. Again the factors bear importantly on the issue of "equal skill," discussed next.

### Equal Skill

"Skill includes consideration of such factors as experience, training, education and ability ... measured in terms of the performance requirements of the job." 29 C.F.R. § 800.125; *Brennan v. People's Electric Cooperative*, 385 F.Supp. 581, 584 (E.D. Okl.1974). In addition to all the factors already referred to in this opinion that negate an equality of skill required for the GS–11 revenue agent and GS–9 tax auditor posts, defendants submit the affidavit of Henry Wessel (Chief of the Employment Section, Personnel Office, Resources Management Division of the IRS Chicago District) together with the detailed Qualification Standards and Promotion Opportunity Announcements for the two positions. Wessel's affidavit accurately portrays the differing job requirements established by the documents themselves:

3. In general, the revenue agent position is considered to be a professional accounting position, whereas the tax auditor position is a technical position concerned with the resolution of federal income tax questions which do not involve professional accounting issues or procedures. The qualification requirements reflect this significant difference. The GS–9 tax auditor position requires four years of general experience and one year of specialized experience which may be satisfied by the performance of a variety of administrative duties. In contrast, the GS–11 revenue agent position requires four years of general experience and three years of professional accounting experience. In terms of educational qualifications, the GS–11 revenue agent position requires 24 semester hours of college accounting courses whereas the GS–9 tax auditor job demands only 6 semester hours of accounting.

Even if it were to be assumed (and the record before the Court does not so establish) that plaintiff has met the higher requirements of the revenue agent job, the fact that the performance requirements of the tax auditor position do not necessitate the same skills bars recovery under the Act. *Dunlop v. General Electric Co.*, 401 F.Supp. 1353, 1360 n. 8 (W.D.Va.1975).

None of plaintiff's several arguments on the subject of equal skill rises to the level of creating a genuine issue of material fact—the definitive test under Fed.R.Civ.P. 56(c). Most particularly, plaintiff's contention that the qualification standards in Exhibits

**416**

7A and 7B "should be given no weight" because they "each refer to the entire range of tax auditors and revenue agents instead of only the GS–9 tax auditor and GS–11 revenue agent" simply misreads the Exhibits themselves. Though they do cover the general requirement for all grades within the positions, they *specifically* reflect the different requirements for each of those grades.

Accordingly the Court determines that on the basis of the "equal skill" criterion alone plaintiff has not met the requirements of the Act as a matter of law and defendants are entitled to summary judgment.

### Conclusion

There is no genuine issue as to any material fact relating to the cause of action sought to be asserted by plaintiff in Count III of the Complaint under the Equal Pay Act. Accordingly defendants are entitled to a judgment under Count III as a matter of law. Entry of such judgment is deferred until it can comprise part of the entry of final judgment in this action.