Mary Alyce ORAHOOD, Appellant,

v.

The BOARD OF TRUSTEES OF the UNIVERSITY OF ARKANSAS and Robert Ross, Appellees.

No. 80–1387.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1981.

Decided April 10, 1981.

William H. Trice, III, Howell & Price, P.A., Little Rock, Ark., for appellant.

Ray Trammell, Gen. Counsel, University of Arkansas, Fayetteville, Ark., Nelwyn Davis, Asst. Atty. Gen., Little Rock, Ark., for appellees.

Before BRIGHT, STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

Plaintiff-appellant Mary Alyce Orahood brought suit in district court[1] alleging defendants-appellees discriminated against her on the basis of sex in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Orahood raised essentially three claims at trial—that defendants violated the Equal Pay Act and that they committed two acts of discriminatory treatment in violation of Title VII. The district court found, with regard to the Equal Pay Act claim and one claim under Title VII, that Orahood had failed to make a prima facie case, and, that even if she had, defendants had rebutted it by showing that their actions were based on reasons other than her sex. With regard to her third allegation, the district court held that although she established a prima facie case which had not been rebutted, the EEOC charge was not filed within 180 days of the violation and therefore the court was without jurisdiction. We affirm.

## I. FACTS

Orahood was initially employed as a secretary by Little Rock University in 1963. In 1970, the institution joined the state university system and became the University of Arkansas at Little Rock (UALR). Orahood's position became that of Assistant to the Registrar. In 1973, she began work in the Office of Institutional Studies at UALR, with a job title of Research Associate. In 1977, her job title became the present one, that of Research Project Analyst.

Twice during her employment with the Office of Institutional Studies the top position in the Office, that of Director, became vacant. This occurred from November 1973 through August 1974, and from November 1977 through April 1978. At both times Orahood was the highest ranking employee in the Office. During these periods the

university official with direct supervisory duties over the Office of Institutional Studies was Mr. Neyland Hester, Director of Administrative Services. Mr. Hester indicated that during these periods Orahood was the acting director of the Office of Institutional Studies, although never formally classified as such. It was common to have "working titles" at UALR which differed from the official titles, and Mr. Hester testified that in 1977 he had approved the use of the working title of "Assistant Director of Institutional Studies" for Orahood, at a time when she was the "number two" person in the Office.

In March 1978, Orahood requested a change in the status of her job position and an increase in salary. A job status "reclassification" was necessary for a salary increase because Orahood was earning the maximum salary for someone with her job title. The titles suggested for Orahood were those of "Assistant Director," "Associate Director," or "Research Coordinator."[2] In May 1978, Dr. G. L. Mears, who had just begun as the new Director of Institutional Studies, recommended a change in job status and increase in salary to $17,500. Mr. Hester, as Dr. Mears' superior, concurred in this view in a letter to Chancellor Robert Ross, a defendant herein. Chancellor Ross did not approve in a change of status at that time.

In June 1978, Mr. Leslie Carruth, an investigator from the Wage and Hour Division of the United States Department of Labor, began an on-campus investigation of UALR. Carruth met personally with several employees of UALR, including Orahood, as well as with several UALR officials. In November 1978, he notified UALR that the cases of plaintiff and a female physical education instructor were situations where a female employee was paid less than a male employee for equal work. The physical education instructor received a pay in-

1. The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas.

2. There are two categories of employees at UALR, "classified" and "unclassified." Orahood was a classified employee and was, there-

fore, under the Arkansas Uniform Classification and Compensation Act, which established predetermined salaries according to an assigned "Grade" and "Step" for each classified position. As a Research Project Analyst, Orahood was Grade 18, Step 3, entitling her to a salary of $14,404.

crease, but Orahood's salary remained unchanged.

In July 1978, Orahood filed a grievance with the Faculty-Staff Appeals Committee. In November 1978, the Committee recommended that Orahood's salary be increased $4,500 a year and that she be given a new job title to properly reflect her status as the number two person in the department. The Committee also recommended that she be given back pay for the period from November 1977 to April 1978, when she served as acting director of the Office of Institutional Studies.

After reviewing the recommendations of the Faculty-Staff Appeals Committee, Chancellor Ross requested that the Arkansas Department of Higher Education conduct a "job audit" of Orahood's employment position. This state agency's response was that the position was properly classified. There was no reclassification of Orahood's position. This lawsuit followed.

## II. EQUAL PAY CLAIM

■ Orahood brings a claim of unequal pay for equal work under both Title VII and the Equal Pay Act. In examining a sex discrimination case involving unequal compensation, Title VII and the Equal Pay Act must be construed in harmony. *Strecker v. Grand Forks County Social Service Board*, 640 F.2d 96 at 99–100 (8th Cir. 1980), *adopted en banc*, (8th Cir. March 10, 1981); *Di Salvo v. Chamber of Commerce of Greater Kansas City*, 568 F.2d 593, 596 (8th Cir. 1978). *See Gunther v. County of Washington*, 623 F.2d 1303, 1311, 1313, 1321 (9th Cir. 1979), *cert. granted*, —— U.S. ——, 101 S.Ct. 1343, 67 L.Ed.2d 330 (1980).[3]

■ "For purposes of [this claim], 'equal' means 'substantially equal'; male and female jobs may be compared even if they are

not identical." *Horner v. Mary Institute*, 613 F.2d 706, 713 (8th Cir. 1980). The inquiry is therefore whether the performance of the jobs requires substantially equal skill, effort and responsibility under similar working conditions. 29 U.S.C. § 206(d)(1). We look to the actual job requirements and performance, not on-job classifications or titles. *Horner v. Mary Institute, supra*, 613 F.2d at 714.

In support of her equal pay claim, Orahood compares her wages and job to that of a male employee, Ed Kremers, whose job title is Assistant Controller in the Controller's Office at UALR. There is no dispute that Kremers and Orahood have received substantially different salaries over the relevant period. During 1979–80, Kremers was classified at a Grade 20 with a salary of $20,462, while Orahood was classified at a Grade 18 with a salary of $14,404.

The district court examined the jobs in detail and found that they did not require substantially equal skill, effort, and responsibility. We must uphold this finding unless it is clearly erroneous. Fed.R.Civ.P. 52. *See Horner v. Mary Institute, supra*, 613 F.2d at 713.

The district court first observed the similarities between the positions of Orahood and Kremers:

(1) both the Office of Institutional Studies and the Controller's Office are administrative, rather than academic, offices of UALR: (2) both the plaintiff and Kremers hold the number two positions in their departments; (3) both employees coordinate, supervise and review the work of lower level employees; (4) both assist in the development of policies and procedures in the departments; (5) both coordinate department needs with computer systems; (6) both are responsible

---

**3.** Under a pure claim of unequal pay for equal work, the standards of the Equal Pay Act apply whether the suit alleges a violation of that Act or Title VII. *See Gunther v. County of Washington*, 623 F.2d 1303, 1321 (9th Cir. 1979), *cert. granted*, —— U.S. ——, 101 S.Ct. 1343, 67 L.Ed.2d 330 (1980). Where the claim is one involving inadequate compensation, but a comparison with equal work is not possible, Title VII may still provide relief. *Id.* The four affirmative defenses in the Equal Pay Act,

see 29 U.S.C. § 206(d), have been incorporated into Title VII, 42 U.S.C. § 2000e-2(h). Therefore a defendant who establishes one of those defenses cannot be held liable under either Title VII or the Equal Pay Act. *Gunther v. County of Washington, supra*, 623 F.2d at 1311–13. *See generally Strecker v. Grand Forks County Social Service Board*, 640 F.2d 96 at 99–100 n.1, (8th Cir. 1980), *adopted en banc*, (8th Cir. March 10, 1981).

for preparing reports; and (7) both deal with other university and governmental agencies in behalf of their departments. *Orahood v. Board of Trustees*, No. LR C 78 457, slip op. at 5 (E.D.Ark. April 16, 1980).

The district court then examined the content of the jobs and found that they could not be equated. It found the Controller's Office to be much larger than the Office of Institutional Studies, and that Kremers had many more employees to supervise than did Orahood. The district court determined Kremers' position required knowledge and work in financial and accounting matters, while Orahood's position dealt with statistics and supplying these materials to university and government agencies as requested. It noted that Kremers' position required a bachelor's degree in accounting or a related field and four years experience, while Orahood's position required a baccalaureate degree in statistics or a related field and two years experience. Kremers had been given the authority to hire and fire, while Orahood had only input into these decisions.

The district court had before it substantial evidence indicating that the jobs were not substantially equivalent. It also had before it substantial conflicting evidence that the jobs were substantially equal, given by Mr. Carruth from the Wage and Hour Division, and given by another expert, Dr. Charles Kenney, who was a psychologist with a consultant firm. Support for this position also came from the testimony of Orahood and Kremers. The district court weighed the evidence and discredited much of the underlying bases for the testimony of plaintiff's experts. It found the differences in the jobs to be more than inconsequential. Weighing of the evidence and making credibility judgments is for the district court.

We cannot say that its findings in this regard are clearly erroneous.[4]

### III. DISPARATE TREATMENT CLAIMS

Orahood has alleged under Title VII other acts of sex discrimination in her compensation. Title VII may properly be invoked in situations of discrimination involving inadequate compensation where the plaintiff's work is comparable (but not substantially equal) work or where the position held by the plaintiff is unique. *See Gunther v. County of Washington, supra*, 623 F.2d at 1311, 1313, 1321.[5]

Orahood raises essentially two claims of disparate treatment under Title VII. First, she alleges the fact that she was a woman was the reason that she was denied a job reclassification and salary increase which had been recommended by several parties, including her supervisors; the Faculty-Staff Appeals Committee; and the Wage and Hour investigator, Mr. Carruth. Second, she alleges that because she was a woman she was not given an increase in salary during her tenure as "acting director" when the Director of the Office of Institutional Affairs position was vacant.

### A. *Failure to Reclassify Job Status*

As a part of her prima facie case, Orahood attempted to demonstrate a pattern and practice at UALR of paying women in administrative positions less than men. Her proof included the Higher Education Staff Information (EEO-6) Report and figures indicating that job audits were conducted in response to requests for reclassifications of women at a much higher rate than for men.

Under the EEO-6 report Orahood was classified with full-time professional non-

---

4. The district court held that even if a prima facie case under the Equal Pay Act was established, the defendants showed the pay differential was for a reason other than sex. Chancellor Ross testified that the Controller's Office at UALR served a far more important function than did the Office of Institutional Studies. Because we affirm the district court's finding that Orahood did not meet her burden of proving the jobs were equal, we need not consider whether defendant proved their affirmative defense of the existence of a factor other than sex. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974); *Usery v. Richman*, 558 F.2d 1318, 1321 n.5 (8th Cir. 1977). *See also Hodgson v. Robert Hall Clothes, Inc.*, 473 F.2d 589 (3d Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 50, 38 L.Ed.2d 85 (1973).

5. *See* note 3 *supra*.

faculty personnel. UALR employed 21 males and 34 females in this category. Twelve of the 21 males earned in excess of $16,000, while only six of 34 females earned over that amount. The district court was unpersuaded by these "raw numbers" because there was no evidence indicating the experience, education, seniority or other qualifications of the employees. The EEO–6 report also did not give a description of the exact jobs involved.[6]

The district court also found the job audit requests inconclusive because they did not indicate if any of the women audited were denied reclassification as Orahood was. Twelve of the 14 job audits performed during 1978–79 were for positions held by women. Reclassification often occurs at UALR without a job audit. Chancellor Ross admitted his request for the job audit in Orahood's case was the only one he had personally initiated.

This disparate treatment case does not fit neatly into the requirements for a prima facie case as established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, that case stated that the elements necessary for a prima facie case would vary according to the factual situations. *Id.* at 802 n.13, 93 S.Ct. at 1824 n.13. More generally, plaintiff can establish a prima facie case by "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under [Title VII].'" *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting in part *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)). *See*

**6.** Although the district court expressed the view that Orahood could have been classified in the report under the "technical/paraprofessional" category, where the salary disparity based upon sex was less, it is our view that the more important consideration is the category in which the Department of Labor actually placed her.

**7.** There was also some evidence that Orahood could have been given the job title "Research Coordinator" which allowed for greater pay

*Texas Department of Community Affairs v. Burdine,* —— U.S. ——, ——, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). *See generally Heymann v. Tetra Plastics Corp.,* 640 F.2d 115 at 119–120, (8th Cir. 1981).

■ Although the statistical data is insufficient to establish a pattern and practice, it, together with the several recommendations that Orahood be reclassified, leads us to conclude that Orahood had established a prima facie case here. Without other explanations, the inference is that sex played an impermissible role in the decision not to reclassify Orahood. The district court erred in its conclusion otherwise.

■ However, the district court also found that even if Orahood had established a prima facie case, the defendants had sufficiently rebutted it by showing that Dr. Ross refused to recommend reclassification for a reason other than Orahood's sex. Dr. Ross testified that the Office of Institutional Studies was not large enough to require the services of two supervisory personnel. The Office had a director and five positions authorized, three of which were filled at the time of trial. Orahood could not be given a salary increase without a job reclassification to the title of "assistant director" or "associate director," and Dr. Ross stated that it had never been his intention to have such a position in the Office of Institutional Studies.[7] He testified that by having a doctorate requirement for the Director position, the Director was to make the discretionary and policy decisions with the rest of the staff providing support of a more technical nature. Orahood has not shown this reason to be pretextual. She has not demonstrated "that the proffered reason was not the true reason for the employment decision." *Texas Department of Community Affairs v. Burdine, supra,* 101 S.Ct. at

than her present title. The district court found it unnecessary to consider the Research Coordinator title because the position had never been assigned to the Office of Institutional Studies, or any other office. Further, there was insufficient evidence of the qualifications necessary for the job, and no evidence that applications had ever been sought to fill this job title. We agree with the district court that no prima facie case was established with reference to the job of Research Coordinator.

1095, 49 U.S.L.W. at 4216.[8] We agree with the district court that the defendants have rebutted the prima facie case.

### B. *Time Served as Acting Director*

■ The district court found that Orahood had established a prima facie case of sex discrimination because she was not given a temporary increase in salary while she served as acting director of her office. It was established that she served in this capacity and that the evidence indicated that males serving in a similar capacity in other offices, namely Ed Kremers and a Mr. Norris, received salary increases by the processing of change of status forms. We agree with the district court. This evidence established a prima facie case and the defendants' proffered reasons for the action were pretextual.

Nevertheless, the district court concluded that it had no jurisdiction to remedy the discrimination because Orahood had not met the jurisdictional requirement of filing the charge with the EEOC within 180 days of the discriminatory act. Orahood served as acting director from November 1, 1977 to May 1, 1978. The charge was filed with the EEOC on December 7, 1978, which is more than 180 days after the last date of her service as acting director, which the district court assumed was the last act of discrimination.

Orahood seeks to establish that the charge was timely filed because defendants' discriminatory acts were continuing in nature or, in the alternative, that there should be an equitable tolling of the 180 day requirement.

To establish a continuing violation, Orahood argues on appeal that the evidence showed not only that males were given a salary increase while they were acting directors of a department, but that their salary was not stepped back down after the period ended. Therefore the defendants' discriminatory acts continue each pay period that the defendants do not lower the salary of the males or, in the alternative, increase Orahood's salary. This issue involves difficult questions of interpretation of the Supreme Court rulings in this area, *e. g., United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) and *Delaware State College v. Ricks,* —— U.S. ——, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).[9] However, it is our view that we need not decide this question.

■ Although the district court did not make express findings as to whether the salary increases remained after the term of acting directorship terminated, implicit in its conclusion is a finding that Orahood did not establish this to be a practice among the males who served as acting directors. The evidence supports this conclusion. An examination of the deposition testimony of Ed Kremers indicates that he served as acting director three times, the last two times for which he was given a salary increase. After his second tenure as acting director ended, his salary was apparently not reduced, but for the third tenure as acting director it was so reduced. This one isolated incident involving Kremers is the only evidence Orahood points to in order to establish a continuing violation. We conclude that Orahood has not demonstrated a practice whereby males who were given a salary increase to serve as acting director had this income continue after the acting directorship ended.

8. The Supreme Court stated the employee could satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* —— U.S. ——, ——, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

9. The courts of appeals have had difficulty in determining when, under *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), a "present violation exists" or, alternatively, when there exists a practice which merely "gives present effect to a past act of discrimination." *Id.* at 558, 97 S.Ct. at 1889. *Compare, e. g., Farris v. Board of Education,* 576 F.2d 765 (8th Cir. 1978) *with Jenkins v. Home Insurance Co.,* 635 F.2d 310 (4th Cir. 1980) and *Satz v. ITT Financial Corp.,* 619 F.2d 738 (8th Cir. 1980). *See also In re Consolidated Pretrial Proceedings,* 582 F.2d 1142, 1148–50 (7th Cir. 1978), *Zipes v. Trans World Airways, Inc. cert. granted,* —— U.S. ——, 101 S.Ct. 1511, 67 L.Ed.2d 813 (1981).

Given the above conclusion, it is clear the last discriminatory act of pay discrimination occurred on May 1, 1978, when Orahood's acting directorship ended. The district court properly concluded that the EEOC charge was filed more than 180 days later and that it was without jurisdiction to afford the plaintiff relief.

Orahood argues that if no continuing violation exists, nevertheless the 180 day requirement for filing an EEOC charge should be tolled with regard to her claim of discrimination in the refusal to grant her a salary increase for her tenure as acting director. The basis for this argument is that she was unaware of the practice of continuing the salary increase even after the acting directorship period ended. Because of our conclusion that no such practice was shown by the evidence, we need not discuss whether the 180 day filing period could be equitably tolled.[10]

The district court is affirmed.

10. *See Satz v. ITT Financial Corp., supra,* 619 F.2d at 745 n.11.