**Janet E. RATTS, Plaintiff,**

v.

**BUSINESS SYSTEMS, INC., C–TEC Corporation and Earl Blasi, Defendants.**

C/A No. 6:87–897–17.

United States District Court,
D. South Carolina,
Greenville Division.

Dec. 14, 1987.

H. Donald Sellers, John B. McLeod, Haynsworth, Marion, McKay & Guerard, Greenville, S.C., for plaintiff.

Harvey G. Sanders, Jr., Kenneth E. Young, Leatherwood, Walker, Todd and Mann, Greenville, S.C., for defendants.

## ORDER

JOE F. ANDERSON, Jr., District Judge.

This matter is before the court on defendant's motion for summary judgment as to plaintiff's common law tort claims (assault and battery and intentional infliction of emotional distress) and plaintiff's Equal Pay Act claim. A hearing of all issues was held November 25, 1987. For the reasons stated in open court, defendant's motion as to the common law claims has been denied. Defendant's motion with respect to the Equal Pay Act claim is hereby granted, on the grounds that plaintiff has failed to establish a *prima facie* case and even if she has met this burden, the defendants have shown a nonsexually based justification for the wage differential.

Larry Edwards formed Business Systems, Inc. (BSI) in 1979, for the purpose of selling computer services, software, and hardware to the cable television industry. The company grew quickly, and Edwards hired various employees, including the plaintiff, Janet Ratts. Ratts was hired in 1983 as a technical customer support representative at a salary of $19,500. She was eventually given additional duties, responsibilities, and commensurate pay raises and was named Vice President of Marketing and Communications, in 1984.

In December 1985, C–TEC acquired BSI. Edwards remained the President of the company, with Earl Blasi, an officer of C–TEC, performing a management role. On March 5, 1987, Ratts was terminated from BSI. At that time she was earning $43,000 per year. BSI employed a total of five vice presidents within the company at this time.

### I. Plaintiff's Prima Facie Case

Defendants have moved for summary judgment as to Count One of the complaint, which alleges a violation of the Equal Pay Act of 1983 (the Act), 29 U.S.C. § 206(d)(a):

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

*Id.*

The regulations promulgated under the Act provide that the "job concept" contained therein refers to equal work in terms of the "skill, effort and responsibility" required for performance of the partic-

ular jobs under review. "In applying the various tests of equality to the requirements for the performance of such jobs, it will generally be necessary to scrutinize the job as a whole and to look at the characteristics of the jobs being compared over a full work cycle." 29 C.F.R. § 800.119 (1986). The regulations note that the equal work standard is considered to be comprised of three separate tests, that is, equal skill, effort and responsibility, "each of which must be met in order for the equal pay standards to apply." 29 C.F.R. § 800.122(a).

Therefore, in order to prevail, the plaintiff must establish a *prima facie* claim by showing (1) she was receiving lower wages than the male vice presidents (2) for equal work requiring equal skill, effort and responsibility. Once a *prima facie* case is shown, the burden shifts to the defendant to prove the differential is based on a reason other than the employee's sex.

Under *Fed.R.Civ.P.* 56, summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Fed.R.Civ.P.* 56(c).

When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e). See also *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The plaintiff in this case initially has the burden of showing her work at BSI was "substantially equal" to that of the male vice presidents. *Brewster v. Barnes,* 788 F.2d 985, 991 (4th Cir.1986). She must show the jobs she performed had a " 'common core' of tasks" and that a "significant portion of the ... jobs is identical." *Id.* Once substantial equality is proven, the "inquiry then turns to whether the differing of additional tasks make the work substantially different." *Id.* In making the critical comparison, the court must "look to actual job requirements and performance, not on-job ... titles." *Orahood v. Board of Trustees,* 645 F.2d 651, 654 (8th Cir. 1981).

■ Ratts has simply not proven that her job duties were substantially equal in skill, effort and responsibility to the jobs performed by the other vice presidents. Ratts' primary responsibility was BSI's marketing and sales activities, including the organization of trade shows in which BSI, and later C–TEC, participated. Ratts Depo. at 7–10. Ratts supervised three secretarial-clerical employees with salaries in the range of $10,000 to $17,000. In 1986 she added a telemarketing supervisor at $15,000, a telemarketing sales person at $18,000 and various part-time telemarketers who were paid on an hourly basis. Edwards Depo. at 50–52. The telemarketing duties were eliminated in January 1987, when the company felt the enterprise unprofitable. Edwards Depo. at 53. Ratts was also involved with facilities management, insurance administration and human resources. Edwards Depo. at 50–52. She participated in making some corporate business decisions and budget formulation. Ratts holds a two year degree from Columbus Technical Institute and before being employed at BSI had held various administrative and marketing positions in and out of the computer industry. Ratts Depo. at 2, 5.

Ratts attempts to compare her duties to those of the other vice presidents at BSI, all male. There is no question Ratts performed her job well and contributed to the overall good of BSI. In fact, Earl Blasi, now President of BSI, stated he never challenged her contribution "with respect to zest and zeal, because there's no doubt ... Ratts was a very, very ambitious employee." Blasi Deposition at 62. William Cox, now Vice–President and General Manager of BSI, stated that Ratts had done an out-

standing job with regard to some of her duties. He further noted her commitment to the company was always very strong. Cox Depo. at 17–18. The fact is simply, that Ratts performed work substantially different from that of the other four vice presidents.

Both William Cox and Russell Bosko received salaries higher than that which the plaintiff received, $70,000 and $60,000 per year respectively. Cox, Vice President of Customer Service during the critical time frame, was the first manager hired by Larry Edwards at BSI. He created the cable television management systems product and the Customer Service Department and was responsible for the installation, commissioning, training and on-going technical customer support for all products and systems provided by BSI. He assisted with sales activities. Edwards Depo. at 10–15. Cox had been hired by Edwards as a computer programmer, an area in which Edwards lacked the requisite technical knowledge. Edwards Depo. at 10. Cox eventually supervised approximately ten employees in the $20,200 to $30,000 salary range and three to four clerical and shipping employees. In 1986 he also supervised eight to ten other employees in sales and product development with annual salaries of up to $50,000. Cox Depo. at 10–14, 52. In 1972, Cox received a Bachelor of Science degree in Math from Francis Marion College. Cox Depo. at 8.

Russell Bosko was Vice President of Research and Development at BSI at the time Ratts was terminated. He graduated from Penn State University in 1972 with a Bachelor of Science in Electrical Engineering. Bosko Depo. at 6. Bosko was responsible for system design and specification, coding and testing of all software products and custom software programming created by BSI. Bosko Depo. at 8, 20. He supervised eight to ten data processing/computer programming employees with salary ranges from $20,000 to $49,000. Bosko Depo. at 22.

Edward Pohl was the BSI Vice President of Finance in 1986. During his employ, he was responsible for all accounting, preparation of financial reports, purchasing, inventory and shipping activities of the company. Edwards Depo. at 34. Records of the company showed Pohl received a Bachelor of Arts Degree in History from Tulane University (1978), and a Masters in Business Administration in Finance and Accounting from Tulane University (1980). Prior to coming to BSI, Pohl had been an auditor with Price Waterhouse and the Chief Financial Officer for a smaller business. Cox affidavit at 4. He supervised three to four accounting and purchasing employees in the $13,000 to $26,500 range and three to four clerical and warehouse employees in the $10,500 to $13,000 range. *Id.* In 1986, Pohl was earning a salary of $48,000 per year.

Finally, Jack Sunderman acted as BSI's Vice President of Sales. He had been hired in early 1982, after having been a sales representative for IBM for approximately twelve years. He had also owned various private businesses after he left IBM. Cox affidavit at 2. Edwards had known Sunderman for fourteen years before he become an employee, and he presently works for Edwards in a new venture. Edwards Depo. at 16–17. Sunderman holds a Bachelor of Science degree from Georgia State University (1964). Sunderman was responsible for the equipment configuration and capability commitment to potential customers and the approval of all financial considerations offered. He managed the internal sales force, sales coordination activities, and on-going account supervision for BSI's customer base. Sunderman supervised four to five sales representatives who earned in the $36,000 to $60,000 salary range. In 1986 Sunderman's salary with BSI was approximately $60,000. Sunderman was terminated from employment at BSI in March, 1987. Cox affidavit at 2–3; Edwards Depo. at 20–24.

■ In response to the defendants' motion, Ratts attempts to point to specific facts in an attempt to show there remains a triable issue. First, Ratts maintains because "[a]ll the vice presidential positions at BSI were comparable to their total involvement to the total operation of the

business" the positions were equal in terms of the Act. Ratts Depo. at 38. However, the equal work standard of the Act is separate and distinct from the so-called "comparable worth" theory under Title VII cases, which has no application to Equal Pay Act Claims. *EEOC v. Madison Community Unit School District No. 12*, 818 F.2d 577, 580 (7th Cir.1987); *Moseley v. Kellwood Co.*, 27 EPD ¶ 32, 348 (E.D.Mo.1981) [available on WESTLAW, 1981 WL307]. Under the comparable worth theory, a plaintiff attempts to establish that her job, although not "equal" to a male's job, is of "comparable worth" to the employer and therefore deserving of the same pay.

Second, Ratts also contends because the executive jobs were of equal importance to the success of the company, they were deserving of the same pay. Cox stated the sales and technical portions of the business were both critical. Cox Depo. at 14. But the fact remains that the *duties* of the vice presidents were not sufficiently similar.

Earl Blasi stated Ratts' position "did not hold the same critical position of other vice presidents" of the company. Blasi Depo. at 78. Furthermore, he stated Ratts "supervised fewer people ... participated in less critical decision making ... supervised lower operatives in employee positions...." *Id.* Blasi agreed that the vice presidents at BSI all had unique areas of responsibility and duties. *Id.* at 79. There were executive meetings from which Ratts was excluded because she did not have "the expertise or qualifications even to converse in those areas." *Id.* at 80. He does admit she was not the only executive to only attend one type of meeting or another, but that statement further illustrates the fact the executives at BSI each had their own duties to perform, which may have been comparable to each other or critical to the business operation, but which were not equal in terms of effort, skill and responsibility. Cox also noted each of the vice presidents performed different jobs. Cox Depo. at 53.

It is obvious at this point that Ratts has not met her burden of proof. The technical computer positions and the accounting/financial department are "highly specialized and require distinct skills [which Ratts did not possess], foreclosing any comparison" Ratts could make between her job and those of Cox, Bosko and Pohl. *Soble v. Univeristy of Maryland*, 778 F.2d 164, 167 (4th Cir.1985). At the very least, her supervisory tasks differed significantly with those of Sunderman. While all vice presidents performed similar tasks such as supervision of employees, corporate decision making, participation in trade shows and the general goal of selling a product, each executive performed different and additional duties which resulted in their jobs not being substantially equal.

The task of comparing executive/management positions is a difficult one. Allegations of Equal Pay Act violations have routinely been rejected by courts applying the equal work standard to jobs involving executive and management positions. *Serpe v. Four Phase Systems, Inc.*, 33 F.E.P. Cases 169, 171 (N.D.Cal. 1982), *aff'd and rev'd in part (reversed on other grounds)*, 718 F.2d 935 (9th Cir.1983) (female international marketing specialist did not establish equal work with two male international marketing executives, or with two account managers); *Orahood v. Board of Trustees*, 645 F.2d 651 (8th Cir.1981) (female director of institutional studies did not establish equal work with a male assistant controller of the college); *Johnson v. Nordstrom–Larpenteur Agency, Inc.*, 623 F.2d 1279 (8th Cir.1980) *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980) (lower court's finding that female insurance marketing manager did not perform equal work with a male sales account executive was not clearly erroneous); *Sensibello v. Globe Security Systems Co.*, 35 EPD ¶ 34,784 (E.D.Pa.1984) [available on WESTLAW, 1984 WL1118] (female branch/regional office manager of security company did not establish equal work with other such managers); *Hauck v. Xerox Corp.*, 493 F.Supp. 1340 (E.D.Pa.1980), *aff'd*, 649 F.2d 859 (3d Cir.1981) (female sales representative did not show equal work with male sales representatives); *Moseley v. Kellwood Co.*, 27 EPD ¶ 32,348 (E.D.Pa.1981) (female attorney did not es-

tablish equal work with more experienced attorneys); *Blowers v. Lawyers Cooperative Pub. Co., Inc.,* 27 EPD ¶ 32,284 (W.D. N.Y.1981) [available on WESTLAW, 1981 WL289] (indexing specialist did not perform equal work as compared to editors with law degrees); *Edmondson v. Simon,* 497 F.Supp. 411, 25 EPD ¶ 31,646 (N.D.Ill. 1980) (female federal tax auditor did not establish equal work with federal revenue agents); *Hyland v. Kenner Products Company,* 13 F.E.P. Cases 1309, 11 EPD ¶ 10,926 (S.D.Ohio 1976) [available on WESTLAW, 1976 WL561] (female "marketing director"/toy analyst failed to demonstrate equal work with subsequent executive director of market research). Further, at least one court has recognized that the claim of an Equal Pay Act violation is undercut by the fact that the plaintiff's salary progressed more rapidly than those of the other employees to whom its work is compared. *Serpe v. Four Phase, supra* at 175. In the instant case, plaintiff's salary more than doubled in her short tenure with BSI. Cox affidavit at 4–5.

In addition to the above arguments, Ratts attempts to create a third issue of fact by pointing out the vice presidential duties overlap at times due to the fact BSI is a small business. Because of this overlap, Ratts contends the jobs are equal. Such a theory was rejected by the court in *Blowers, supra,* wherein the court found while the tasks overlapped when the employees were busy, they did not consistently perform a common core of duties. *Blowers* at ¶ 22,994. Fourth, in response to defendants' motion Ratts submitted a statement by Edwards taken by defense counsel when Edwards was still employed by C–TEC and a memorandum from Edwards to Blasi, dated December 15, 1986. Plaintiff's Ex. 7, to Blasi Depo. In the statement, Edwards agrees Ratts' job duties were similar to the other vice presidents because she participated in meetings and made decisions. Edwards stated he made no distinction between Ratts as one class of vice president and Cox as another. Edwards Statement at 4. But Edwards goes on to say the vice presidents had "different job functions" although he didn't think one was more valuable than the other. In the memorandum, Edwards stated Ratts "level of contribution to the company is equal" Plaintiff's Ex. 7, Blasi Depo. Finally, at the hearing, Ratts directed the court's attention to the Bosko deposition wherein Bosko was asked to set forth what he believed to be an informal organization chart. He was asked whether any executive was "more vice president" than another, and opined that Ratts and Pohl would both occupy the lowest level of vice president positions. Bosko Depo. at 40–41. This opinion does not bolster plaintiff's case however, as Bosko was responding on the basis of which employees were perceived to have the most input into the business, not whether their day-to-day functions were similar. Again, while the positions may have been comparable, Ratts has not shown them to be equal.

Therefore, after reviewing the depositions, affidavits and 16(b) interrogatories submitted in this case, the court finds defendants entitled to judgment as a matter of law. The evidence in this case is such that a reasonable jury could not return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All of the evidence conclusively points out that the vice presidents each had specific duties and responsibilities, and Ratts' employment did not require the same skill, effort, or responsibility as did the male vice presidents' positions. No "rational finder of fact" could find the jobs substantially equal based on the evidence as presented. *Anderson* 106 S.Ct. at 2513. Therefore no genuine issue has been presented to this court and summary judgment is appropriate.

## II. Defendants' Rebuttal

Even if Ratts has shown to the court a *prima facie* case, on rebuttal, the defendants have submitted sufficient, uncontroverted evidence which proves Ratts received a lower salary due to "any factor other than sex." 29 U.S.C. § 206(d)(1). Two time periods are relevant to the court's inquiry—the period in which Edwards controlled the employees' salaries

and the period after C–TEC acquired the business.

Edwards stated he paid Ratts at a level where he could acquire and keep her services, just as he did the other employees. He further stated he progressed everyone "at a rate as least as I could possibly pay." Edwards statement at 7. He admitted paying different amounts, but stated the salaries depended on what he *had* to pay people. *Id.* at 8. Edwards also admitted to overpaying key people so as not to lose them. Edwards Depo. at 87.

There is no violation of the Act if management is forced to pay more money to be able to hire someone with special skills or to fill a particular need. *Moseley v. Kellwood, supra,* 27 EPD at ¶ 23,402. Therefore the court must now look to the period after Edwards sold BSI to C–TEC.

Once Blasi assumed some of the management responsibility at BSI (after December 1985), he froze all the vice presidents' salaries. Blasi Depo. at 69. Any salary increase had to be approved by Blasi. *Id.* at 53. In fact, Ratts did receive a salary increase at some point in 1986, but it was revoked because Blasi had never approved the change. Edwards apparently approached Blasi several times concerning Ratts' salary. Specifically, in December 1986 Edwards sent Blasi a memorandum concerning the possibility of giving Ratts a raise. See plaintiff's Ex. 7, to Blasi Depo. Blasi testified he did not find it prudent to give Ratts an increase at that time because the company had lost three million dollars during 1986. Blasi Depo. at 57–60. Blasi was also concerned that the information provided to him by Edwards through the memo was not totally accurate and that Edward's motive was not proper. Finally, Blasi did not feel Ratts deserved a raise because her duties and responsibilities were not the same as the other vice presidents. Blasi Depo. at 83.

Therefore, the defendants have proven a reason other than sex for the existence of the wage differential. This conclusion is based on the fact Blasi, as an agent of C–TEC, merely froze the salaries as set by Edwards, and Edwards maintained salary differences because of market forces. The failure of Blasi to raise Ratts' salary after the acquisition was not based on her sex, but on adverse economic conditions at BSI, the salary moratorium imposed equally upon all executives and the feeling Ratts' work was different from that of the others. Again, plaintiff has raised no issue of material fact as to the defendants' reasons for the maintenance of salary differentials and summary judgment is appropriate as a matter of law.

The first cause of action, based on the Equal Pay Act, is hereby dismissed under *Fed.R.Civ.P.* 56. The other causes of action have been set for trial.

IT IS SO ORDERED.