Marilyn A. SCHULTE, Plaintiff,

v.

WILSON INDUSTRIES, INC., Defendant.

Civ. A. No. H-79-1061.

United States District Court,
S. D. Texas,
Houston Division.

June 17, 1982.

Richard Parker, Houston, Tex., for plaintiff.

Clinton S. Morse, Andrews & Kurth, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McDONALD, District Judge.

### Introduction

This is an individual employment discrimination action brought by a former employee of Wilson Industries, Inc. The plaintiff commenced this suit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and the Equal Pay Act, 29 U.S.C. § 201, et seq., alleging that defendant, Wilson Industries, Inc., discriminatorily denied her pay equal to that of males performing substantially equal work, discriminatorily denied her promotional opportunities, and ultimately constructively discharged her from the company's employment. This action was tried without a jury. At the conclusion of the plaintiff's case, the defendants moved the Court to dismiss the plaintiff's action, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The Court denied the motion as to the plaintiff's constructive discharge claim and granted the motion with respect to the plaintiff's claim for damages for emotional harm. The defendant's motion in limine, to exclude a psychologist's testimony about the plaintiff's emotional condition, was carried with the case. That motion is hereby DENIED.[1] The parties submitted post-trial memoranda and proposed findings of fact and conclusions of

law. After having considered the record, the testimony and demeanor of the witnesses, the exhibits, arguments of the parties and the applicable law, the Court now enters its Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

#### A. Introduction

1. At all times material hereto the defendant, Wilson Industries, Inc. [hereinafter "defendant" or "Wilson"] was "an employer" within the meaning of 42 U.S.C. § 2000e and 29 U.S.C. § 206(d)(1). Defendant Wilson Industries is a corporation having its principal place of business in Houston, Texas.

2. Plaintiff, Marilyn Schulte, is a female who was employed by defendant as an expediter in its International Division on or about December 12, 1974 at a starting salary of $550.00 per month. On or about December 5th or 12th, 1976, the plaintiff was promoted to the position of Assistant Account Manager at a starting salary of $800.00 per month. This is the position the plaintiff held when she left the employ of defendant effective January 13, 1978.[2]

3. The International Division of Wilson Industries, Inc. was at all times material hereto engaged in the world-wide distribution of oil field and other industrial equipment and materials. In the International Division, Wilson divided its major customers into accounts, and assigned account managers to be responsible for specific accounts. The account managers were assisted by assistant account managers assigned to the account.

#### B. Plaintiff's Unequal Pay Claim

4. During her tenure at Wilson Industries, plaintiff was a competent employee

---

1. To the extent that plaintiff offered that testimony in support of her claim for damages for emotional harm, the Court's ruling on defendant's 41(b) motion finding no cause of action existed as a matter of law for damages for psychological harm under Title VII or the Equal Pay Act, the motion in limine is moot. However, seemingly the plaintiff also offered that testimony in support of her claim that she was constructively discharged. For the latter claim such testimony was relevant and admissible.

2. The hierarchy of pertinent positions in the International Division was as follows: expediter, assistant account manager and account manager.

who as an expediter implemented various procedures to facilitate the handling of accounts to which she was assigned. After her promotion to assistant account manager, plaintiff continued her commendable performance and her account manager assigned her a broad range of account managerial duties.

5. While the plaintiff was employed as an expediter, and subsequently as an assistant account manager, she performed jobs which were substantially similar to and which required the same skill, effort and responsibility as and were performed under working conditions similar to, those jobs performed by similarly classified male employees of defendant.

6. In June of 1976, the defendant hired a male, Doug Thompson as an expediter at a starting salary of $800.00 a month. At this time the plaintiff, who had been working for the defendant for 1½ years, was making $725.00 per month. Thompson only remained in the defendant's employ for one month. (Defendant's Exhibit No. 4)

7. After plaintiff Schulte was promoted to assistant account manager on December 5, 1976, she was compensated at a rate of $800.00 per month for one year. On December 9, 1977 she received a $125.00 raise which increased her salary, effective December 5, 1977, to $925.00 per month. (Defendant's Exhibit No. 4 and 2)

8. In January 1977, the defendant promoted a male employee, Norman Dillon, from the position of warehouseman to that of assistant account manager. Employee Dillon's starting salary was $850.00 per month, which was $50.00 per month more than plaintiff Schulte's salary at that time. (Defendant's Exhibit 4, 31). The plaintiff had been employed with the defendant for two years prior to her promotion: Dillon had been employed with Wilson for seven months prior to his. (Defendant's Exhibit No. 4) Norman Dillon's compensation was increased to $925.00 per month on June 20, 1977; approximately five months after his promotion. Plaintiff Schulte's compensa-

tion was increased to $925.00 per month on December 5, 1977, one year after her promotion and almost six months after employee Dillon's raise. (*Id.*)

9. During 1977, the defendant hired male employees as expediters at salaries in excess of what plaintiff Shulte was making as an assistant account manager. Specifically, Steven Singletary was hired on August 30, 1977 at $850.00 per month and Michael Nickelotte was hired on September 6, 1977 also at $850.00 per month. (Defendant's Exhibit 4, 25).

10. During 1977, the defendant also hired male assistant account managers at starting salaries in excess of the salary the plaintiff received as an assistant account manager.

In April and August of 1977 the defendant hired David Chalmers and Robert Vecchio as assistant account managers. These employees' starting salaries of $850.00 and $901.00 per month respectively, exceeded the $800.00 per month the plaintiff received. (Defendant's Exhibit No. 31)

The evidence established that in May of 1977 defendant hired Larry Curtis as an assistant account manager at a starting salary of $1,050.00 per month, while plaintiff Schulte continued to receive $800.00 a month. Larry Curtis was hired primarily to assist the plaintiff with her work load. Larry Curtis had very little previous work experience which could be brought to bear on his duties as an assistant account manager at Wilson; the plaintiff was primarily responsible for training Curtis in his new position. The duties and functions performed by Curtis and Schulte were substantially the same; Curtis' duties as an assistant account manager required no more skill, effort or responsibility than plaintiff's duties. Plaintiff's salary was never made comparable to that of Larry Curtis.

11. In light of the above, (Findings 4 through 10) the Court finds plaintiff established that the defendant inequitably compensated her, on the basis of sex, while she

was an expediter and an assistant account manager.[3]

12. In rebuttal, defendant offered both testimonial and statistical[4] computations to support its explanations for the salary disparities that existed between plaintiff and male employees.

First, the defendant explained that interim disparities sometimes existed between male and female employees but that Wilson attempted to erase such disparities by evaluating employees on their anniversary dates and granting pay raises at that time. Secondly, the defendant stated that inflation and Houston's competitive job market, required Wilson to increase the starting salaries of both male and female employees hired in 1977 and thereafter. These increased starting salaries exceeded salaries paid to incumbent employees. Finally, the defendant contended that Larry Curtis was offered a starting salary far in excess of plaintiff's, or any other incumbent assistant account manager, as the result of a unique situation unrelated to the sex of either employee.

13. Defendant's wage policy purportedly provided that an employee would receive a raise after three months of employment and then an annual "merit" increase on his or her employment anniversary date (Defendant's Exhibit No. 11).[5] There was no evidence, however, of any formalized procedures whereby employees were evaluated systematically according to predetermined objective criteria.

A comparison of female and male employees' work histories illuminates the inequities of the defendant's "anniversary date" salary adjustment system. In plaintiff Schulte's case, she was promoted from expediter to assistant account manager in December 1976. (See Finding of Fact No. 7 supra). Norman Dillon was promoted from the warehouse to assistant account manager in January 1977, at a salary which exceeded the plaintiff's and five months later he received a $75.00 per month increase. (See Finding of Fact No. 8) The plaintiff did not receive a pay increase until her anniversary date in December 1976. As a result, the plaintiff's salary was not made comparable to that of her male counterpart until one year after her promotion, eleven months after Dillon's promotion, almost six months after Dillon's pay raise and more than two months after Dillon terminated his employment with Wilson. (Compare Defendant's Exhibit No. 4 and Exhibit No. 31)

The defendant failed to articulate any reason whatsoever for the compensation disparity between plaintiff and Norman Dillon.[6]

---

3. This finding is consistent with the Equal Employment Opportunity Commission's January 3, 1979 determination that "[Defendant's] female employees who have been employed longer than males earn less on the average than males in the two job classifications of Expediters and Assistant Account Managers ..." (Plaintiff's Exhibit No. 6). In Smith v. Universal Services, Inc., 454 F.2d 154, 157 (5th Cir. 1972), the Fifth Circuit held that the EEOC's investigation report and finding of probable cause "is highly probative of the ultimate issue" of liability, despite the de novo proceedings in federal court.

4. Defendant offered exhibits covering the time period from January 1978 through December 1979. (Defendant's Exhibits 26, 27, 32, 33). These exhibits are of limited value because they cover a period subsequent to both the filing of plaintiff's EEOC Charge on December 9, 1977 and the EEOC's January 3, 1979 determination that defendant violated Title VII of the Civil Rights Act (See Plaintiff's Exhibit 6 and 7). Such exhibits reflecting subsequent actions may bear on plaintiff's claim for injunctive relief. For resolving the issue of whether plaintiff was treated differently than similarly situated males because of her sex, however, statistical evidence of conditions at the time plaintiff's claim arose is more probative of defendants' liability. Parham v. Southwestern Bell Tel. Co., 433 F.2d 421 (8th Cir. 1970).

5. Mr. Carl Alexander's testimony that salary increases were only awarded on an employee's anniversary date, was inconsistent with this purported policy.

6. The Court recognizes sua sponte that Mr. Dillon had four years of experience as the Junior Assistant Manager of a Winn Dixie store. The defendant, however, did not claim that the wage disparity noted above was due to Dillon's prior experience. Nor did defendant claim Dillon performed any additional duties which plaintiff did not perform. In this vacuum it is

14. Two other female assistant account managers were never compensated at the same rate as Norman Dillon. Both Janis Collier and Jean Taylor were promoted to assistant account manager on August 2, 1976 with starting salaries of $750.00 per month. Six months later, in February 1977, these women received salary increases of $50.00 and $60.00 per month to raise their salaries to $800.00 and $810.00 per month respectively. At this time, Norman Dillon was receiving $850.00 per month for performing the same duties and responsibilities as Collier and Taylor. As mentioned above, Norman Dillon received a $75.00 per month pay increase, in June 1977, raising his salary to $925.00 per month. (Finding of Fact No. 8) Employees Collier and Taylor continued to receive $800.00 and $810.00 per month until they were promoted to account managers. (Defendant's Exhibit No. 4) The defendant never explained these disparities.[7]

15. Similarly, a comparison of employees Cheryl McVey and Herbert Abrams reflects a consistent pattern of unequal pay for women. Ms. McVey was promoted from an expediter to an assistant account manager on November 11, 1974 with a starting salary of $700.00 a month. Herbert Abrams was promoted from warehouseman to assistant account manager on March 3, 1975 with a starting salary of $775.00 per month. (*Compare* Defendant's Exhibit 28 and 29 with employee history sheets in Defendant's Exhibit No. 4) On May 26, 1975, six months after her promotion, Ms. McVey received a fifty dollar per month raise, increasing her salary to $750.00 per month. On October 13, 1975, seven months after his promotion, Herbert Abrams also received a fifty dollar per month raise increase in his salary to $825.00 per month. Two months after Herbert Abrams began to be compensated at $825.00 per month, Cheryl McVey's compensation was comparably increased to $825.00 per month. (Defendant's Exhibit No. 34)

The work history of these two employees demonstrates that Ms. McVey was paid less than her male counterpart for a period of nine months, from March 1975 to December 1975. Again, the defendant failed to articulate any explanation whatsoever for this disparity. Both Abrams and McVey performed substantially the same duties and responsibilities as assistant account managers; neither one of them had a college education. (Defendant's Exhibit No. 4, 45A)

16. With respect to plaintiff and Ms. McVey, the defendant apparently would like the Court to find that since these women were *eventually* paid salaries comparable to those of their male counterparts (leaving aside Larry Curtis as a comparison) their wage disparity must have been based on some factor other than sex. There is no support for this analysis in either fact or law.

17. The defendant explained that throughout 1977 and thereafter Wilson was forced to increase starting salaries due to market conditions and inflation. As a result, the defendant contends it paid new employees, both male and female, more than incumbent employees. After reviewing salary levels from January 1977 through January 1978 the Court concludes the evidence does not support defendant's explanation. (*Compare* Defendant's Exhibits 5, 6, 22–25, 28–32)

When the plaintiff was hired as an expediter for the International Division, in December 1974, her starting salary was $50.00 per month less than that of the incumbent expediter who was also a female. A new expediter was not hired until June

impossible for the Court to determine what, if any, premium should be given for Dillon's experience.

7. Apparently, the only female employee compensated at a starting salary comparable to Norman Dillon's, during the period in question, was Letha Wright who was promoted to the position of assistant account manager in September 1977 at $851.00 per month. (Defendant's Exhibit No. 31) Ms. Wright received this promotion after working for the defendant for four years, with a two month interruption in her employment during 1973. Prior to her promotion, Letha Wright was assigned as an expediter for thirteen months. (Defendant's Exhibit No. 4)

1976 when Doug Thompson became employed by the defendant. Employee Thompson was given a starting salary which exceeded that of the highest paid incumbent female expediter by $75.00 per month. (Defendant's Exhibit 22) During 1977 five new expediters were hired for the International Division; four males and one female. These new employees were all hired within approximately three months of each other. Although all four of the male hires were offered a starting salary far in excess of that of any of the incumbent female expediters, the new female expediter, Janis Ballow, was offered a starting salary below that of the top paid incumbent female expediter. Ms. Ballow's salary was also $100.00 per month less than that of the new male expediters. Moreover, the two male expediters hired in December 1977 were offered starting salaries which exceeded that offered Janis Ballow in September but which were virtually identical to the salaries offered the male expediters hired in September and August. (Defendant's Exhibit No. 25). This evidence reveals the absence of any uniform practice of paying new expediters more than incumbents.[8]

18. With respect to assistant account managers, in the International Division, the evidence again contradicts defendant's explanation that new assistant account managers were offered higher starting salaries than those of incumbent assistant account managers, regardless of sex.

In April 1977 David Chalmers was hired as an assistant account manager at a starting salary which was higher than any salary paid to an incumbent female assistant account manager, but which was identical to the salary paid the incumbent male assistant account manager. (Defendant's Exhibit No. 31) When Robert Vecchio was hired in July 1977, he was paid less than two of the incumbent male assistant account managers but more than the two female assistants, including plaintiff. Mr. Vecchio did receive a higher starting salary

than David Chalmers. (Defendant's Exhibit No. 31) No female assistant account managers were hired from the outside during the twelve month period from January 1977 to January 1978.[9]

These facts lead the Court to conclude that even in the course of compensating new employees at a rate commensurate with market conditions and inflation, the defendant chose to discriminate between new male and female hires. Thus, the defendant's argument, that new employees were paid a higher salary than incumbents, regardless of sex, fails.

19. Finally, defendant argued that Larry Curtis was paid a rate in excess of plaintiff Schulte, and all other incumbent assistant account managers, because he would not accept employment with Wilson for less.

The defendant explained that during the course of Curtis' interviews it became apparent that Mr. Curtis was making considerably more at his current job with a freight company than Wilson was paying assistant account managers. Carl Alexander who was Vice President of the International Division during the time in question, explained that defendant agreed to pay Mr. Curtis at a rate far in excess of other assistant account managers because they felt Mr. Curtis would not accept a salary which represented more than a $400.00 a month pay cut. Mr. Curtis testified, however, that even though he and his wife had made a determination of the minimum salary he would have to make in order to justify his acceptance of employment with Wilson Industries, he neither discussed nor negotiated that minimum salary rate with the defendant prior to the defendant's offer of $1050.00 per month. The Court found Mr. Curtis to be a credible witness with no apparent reason to obscure the facts. The Court, therefore, accepts Mr. Curtis' version of the facts surrounding the setting of his starting salary.

---

8. *See also* Finding of Fact No. 22 *infra*.

9. Letha Wright was promoted to assistant account manager in September 1977 at a start-

ing salary which was fifty-one dollars per month more than plaintiff's salary at the time.

20. Defendant's Personnel Director, Ann Gray, stated that employees salaries were adjusted on their anniversary date in order to alleviate wage disparities between new and incumbent employees. The Court finds, however, that defendant's salary administration system had the effect of "locking in" wage disparities. For example, despite the fact that Larry Curtis received a starting salary which far exceeded any other employee in his position, the defendant still awarded Curtis a $76.00 per month pay increase on December 5, 1977, five months before his anniversary date (Defendant's Exhibit No. 4). Therefore, although plaintiff received her anniversary raise on or about December 9, 1977, her monthly salary remained substantially less than Larry Curtis' salary.

21. Mr. Alexander explained that Larry Curtis received the starting salary he did because Wilson had a practice of paying a premium for employees with a college education. Although Curtis had no previous account managerial experience, he did have a bachelors degree in business and commerce. Mr. Alexander argued that despite Curtis' lack of experience with the duties of Wilson's assistant account managers, Curtis had the ability to learn quickly, supervisory potential and a personality for sales. Defendant presented absolutely no evidence, however, that Larry Curtis was given, and performed, additional duties which plaintiff did not perform. Nor was there any evidence that Curtis' duties required any more skill than plaintiff's duties required. To the contrary, the evidence revealed that since Curtis was so inexperienced when he first started working for Wilson, plaintiff performed more assistant account managerial duties than he did.

22. The evidence failed to establish that defendant had a consistent practice of compensating employees for advanced education or applicable experience. In fact, the defendant utilized a subjective salary determination process. Mr. Alexander exercised sole authority to set salary levels in the International Division and he did so without the benefit of any company approved guidelines. This subjective process produced incongruous and discriminatory results. For example, expediters Stephen Singletary and Janis Ballow were hired within one month of each other, and even though Ballow had three times the college education of Singletary, he was paid $100.00 per month more than she was. Moreover, the evidence suggests that Ballow had considerable more applicable work experience than Singletary. (Defendant's Exhibit Nos. 4, 25) Therefore, even when a woman had more education than a man she was paid less.

Another example of inconsistency is revealed among the male expediters hired in 1977. Expediters McCreery, Emge and Nickelotte all attended college for at least four years. (Defendant's Exhibit No. 4) Although their work histories do not indicate it, the Court assumes these gentlemen received bachelors degrees. Expediter Stephen Singletary, on the other hand, only attended college for one year on a part-time basis. (Defendant's Exhibit No. 4) Nevertheless, these four male expediters were all paid virtually identical starting salaries: McCreery, Nickelotte and Singletary received $850.00 per month and Emge received $851.00 per month. None of these gentlemen had any significant previous expediting experience.

Norman Dillon's starting salary as an assistant account manager in January 1977, was identical to the starting salary received by David Chalmers when he was hired for the position in April 1977. David Chalmers apparently had attended college, although there was no indication of whether he received a degree. Employee Dillon, on the other hand, had no college education. (Defendant's Exhibit No. 4)

In light of the above, the Court concludes the proof discloses no objective standards based on a college education which account for the salary disparities between men and women.

23. A review of the evidence discussed above shows that the factors of college education, work experience, and competitive markets do not support defendant's claim that the disparate pay between plaintiff

Schulte and her male counterparts was due to some factor other than sex. Quite to the contrary, the Court finds the defendant discriminatorily applied these factors to women.

### C. Plaintiff's Promotional/Classification Claims

24. Plaintiff complained in her pleading that the defendant discriminatorily denied her a promotion from assistant account manager to account manager. At trial, the plaintiff contended that during her tenure with the defendant she performed the duties of an account manager but was classified and paid at the rate of an assistant account manager. She alleged that the defendants failed to promote her because of her sex.

In this regard, the Court finds that in preparing an assistant account manager for promotion to account manager status, the defendant would assign an assistant account manager to work with an account manager. The account manager would gradually assign his/her assistant, an ever-broadening range of tasks and duties that an account manager would be expected to perform. Once an assistant account manager was able to perform all of the duties of an account manager and otherwise successfully manage the account of a customer with limited supervision from the account manager, the defendant considered the assistant qualified for promotion to an account manager position. During the assistant's "training process" the account manager retained overall authority and responsibility for the customer accounts.

25. As an assistant account manager, the plaintiff was an exemplary employee, and her account manager, Mr. Gordon Gamble, relied heavily on her experience in managing the various accounts on which she worked with him. Plaintiff assisted Gordon Gamble primarily on the Aramco customer account, which he had solicited and developed. Mr. Gamble was particularly involved with the Aramco account. Apparently, even after he had been promoted to a group supervisor Mr. Gamble did not relinquish his account manager responsibilities for that account. Mr. Gamble's tenacity toward the Aramco account thwarted plaintiff's opportunity to assume full responsibility for this account. (See Finding of Fact No. 24 supra)

26. The defendant acknowledged that, at the time of her resignation, "Mrs. Schulte had a promotion in store for her as an account manager" (Defendant's Exhibit No. 12). The Court finds therefore that, at the very least, by the time of her resignation, the plaintiff was qualified for promotion to an account manager's position.

27. The Court finds that plaintiff presented evidence confirming that she belonged to a group protected by Title VII; that she was desirous of being promoted to an account manager position; and that she was qualified for promotion to same during the latter period of her tenure with the defendant. Nevertheless, plaintiff failed to present evidence that account manager positions were open or available, during the period in question, for which she applied or which she desired; that she was denied such position; and that defendant continued to look for a male employee with credentials similar to those of plaintiff to fill such a position. Therefore, plaintiff's allegation that she was discriminatorily denied a promotion, must fail.

28. Although the plaintiff established that at the time of her resignation she was qualified to be promoted to the position of account manager, she failed to establish that during her tenure with the defendant she actually performed work which was substantially equivalent to that of account managers in terms of skill, effort and responsibility. Therefore, the plaintiff's claim that she was discriminatorily denied compensation comparable to other account managers, must also fail. (See footnote 7 infra)

### D. Plaintiff's Claims of Constructive Discharge and Emotional Harm

29. The plaintiff alleged that the defendant's sex discrimination against her and the subsequent events surrounding that discrimination directly caused her to suffer

a clinical depression that diminished her capacity to work. Plaintiff alleged that this clinical depression was a critical contributing factor in her resignation, which she contends was involuntary, i.e. a constructive discharge. In addition, the plaintiff alleged that her depression has, to this date, diminished her capacity to work. In support of her claim that the defendant constructively discharged her, the plaintiff testified about a number of employment slights which she believed she was subjected to because of her sex.

30. The plaintiff offered persuasive testimony that her supervisor, Gordon Gamble, discriminatorily restricted her contact or communication with Aramco customers because he did not feel this Arab client would accept a woman in a position of responsibility over their account. Defendant rebutted this testimony with evidence which showed that by August, 1977 Marilyn Schulte was sending letters to Aramco and signing same "Marilyn Ann Schulte, assistant account manager." (Defendant's Exhibit No. 49A) Both Larry Curtis and the plaintiff testified that in the latter part of 1977, Gordon Gamble instructed them to sign their own names to business communications with Aramco. According to Larry Curtis, he usually communicated directly with customers while the plaintiff preferred to communicate with suppliers. In light of this testimony, the Court finds that plaintiff failed to introduce sufficient evidence to substantiate her complaint that the defendant discriminatorily restricted her contacts or communication with Aramco.

31. Long after the plaintiff had been promoted from expediter to assistant account manager, Carl Alexander, the Vice President of the division in which the plaintiff worked, introduced her to a group of customers as an expediter when, according to the plaintiff, he knew in fact that she was actually an assistant account manager. In December of 1977, Carl Alexander circulated an inter-office memo regarding the Aramco account and left plaintiff's name off the distribution list. Mr. Alexander did not apologize for this omission until after he learned plaintiff had filed an EEOC discrimination complaint.

32. When Larry Curtis was hired as an assistant account manager, in May 1977, he was assigned a desk in an office reserved for account managers, whereas the plaintiff remained at a desk in the common area adjacent to this office. There was only one female account manager assigned to the office where Larry Curtis sat and all other male assistant account managers were assigned desks which were not in the common area. It was only until a few months before her resignation that the plaintiff moved to a desk inside the office Larry Curtis occupied. The defendant offered no explanation for this arrangement.

33. The plaintiff's main complaint was that Larry Curtis was paid significantly more than she was for performing the same duties and responsibilities. Marilyn Schulte's salary was never equalized with that of Larry Curtis even though the account manager for whom both of them worked, Mr. Gordon Gamble, was aware that the plaintiff was greatly disturbed by the salary disparity. The salary disparity seemed particularly unjust to the plaintiff in light of the fact that Larry Curtis was initially hired to assist her with her workload and plaintiff was responsible for Curtis' training for approximately one and a half months.

34. In December 1977, seven months after Larry Curtis was hired, Gordon Gamble met with the plaintiff for her annual review. At this meeting Mr. Gamble advised plaintiff that she was due to receive an $125.00 per month pay raise to bring her salary to $925.00 per month. This raise was announced on December 9, 1977 but it was effective as of December 5, 1977 (Defendant's Exhibit No. 2) The plaintiff felt she deserved a larger increase in order to make her salary more comparable to Larry Curtis' salary; Larry Curtis also received a pay increase in December 1977, bringing his salary to $1,126 per month (Defendant's Exhibit No. 4). On December 9, 1977 plaintiff filed her EEOC charge against the defend-

ant on the ground that defendant discriminatorily compensated her.[10]

35. Plaintiff alleged that Gordon Gamble increased her work load, after she filed her EEOC Charge, by referring her customer inquiries which had to be acted upon immediately and thereby causing her to work more overtime. The Court finds, however, that the defendant did not discriminatorily increase plaintiff's work load either before or after she filed her EEOC Charge nor does the Court find any evidence to support the plaintiff's assertion that the defendant was "making a record" on her or preparing to fire her at the time she resigned.

36. In light of the above, the Court finds that although the plaintiff experienced employment slights which, in all likelihood, were due at least in part to her sex, these incidents did not make plaintiff's working conditions so intolerable that a reasonable person in plaintiff's position would have been compelled to resign. Moreover, although the Court finds that the plaintiff was discriminatorily compensated by the defendant, it cannot find that such discrimination constituted a constructive discharge of plaintiff.

37. The Court further finds that while the plaintiff was undoubtedly upset, indeed mildly depressed, at the time she resigned her employment, there is no clear causal connection between the defendant's actions and the plaintiff's depression.

The record reflects several factors which could have contributed to the plaintiff's depression and her decision to resign. For instance, in the latter part of October and early November, 1977 plaintiff's daughter was ill and required surgery. During this time the daughter's doctor accused plaintiff of causing the daughter's intestinal disorder by not feeding her correctly. This accusation, according to plaintiff's expert witness, clinical psychologist Barbara Hoek, greatly upset the plaintiff and generated serious feelings of guilt. (Defendant's Exhibit No. 83) Indeed, before the plaintiff left the defendant's employ, she told several co-workers that when she returned to work she would seek employment closer to home. In addition, the plaintiff's marriage had apparently been a long standing source of strain for her, and she was particularly frustrated by her husband's handling of family finances.

While plaintiff was experiencing these family problems her job responsibilities at work were increased. Plaintiff told the EEOC that one of her reasons for resigning was too much overtime. (Defendant's Exhibit No. 12) No doubt the plaintiff felt this overtime was unjust in light of her disparate compensation. Plaintiff advised the Texas Employment Commission, in a hearing to determine her eligibility for unemployment compensation, that she quit her job in protest of the defendant's refusal to equalize her salary with that of Larry Curtis. (Defendant's Exhibit No. 16)

38. Based upon all of the foregoing, the Court is able to conclude that Ms. Schulte was upset and depressed at the time she resigned, and recognizes that, having learned that she had been paid a salary lower than males who performed the same duties, she very well may have perceived that she was being treated differently because of her sex. Nevertheless, the Court finds plaintiff failed to sustain her burden of proof of a constructive discharge.

### E. Damages

39. The Court finds that the defendant denied the plaintiff equal pay for equal work performed by male employees in violation of the Equal Pay Act and Title VII. The Court further finds that such denial was "willful" within the meaning of the Equal Pay Act. In that respect, the defendant readily acknowledged that it was aware female employees were often paid less than male employees and stated that it attempted to eliminate these disparities by granting annual pay increases. This fact convinces the Court that the defendant

**10.** *See* nn. 3 and 4 *supra.*

knew of the possible applicability of the Equal Pay Act to its actions.[11]

40. The Court finds that plaintiff failed to prove she was constructively discharged because of her sex. Even assuming plaintiff was constructively discharged, the plaintiff failed to mitigate her damages. The Court does not find that the plaintiff was so emotionally scarred by her experience at Wilson Industries that she was unable to work or at least seek employment from January 1978 until March 1981. In fact, Ms. Hoek testified that at the time Ms. Schulte resigned from Wilson Industries she probably was able to continue working, and that employment is often recommended therapy for mildly depressed individuals. In light of all the evidence regarding plaintiff's employment pursuits since her resignation, the Court finds it more reasonable to conclude the plaintiff decided not to seek reemployment until after this law suit was litigated, than to conclude she was unable to work or expected to be reinstated by the defendant (*See* Defendant's Exhibit No. 85).

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of this cause under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* and the Equal Pay Act, 29 U.S.C. § 201, *et seq.* Venue is proper pursuant to 28 U.S.C. § 1391(c).

### A. Unequal Pay Claims

2. The Equal Pay Act, § 6(d) of the Fair Labor Standards Act, 29 U.S.C. § 206(d) (1970), requires equal pay for work on jobs that require "equal skill, effort, and responsibility and which are performed under similar work conditions ..." 29 U.S.C. § 206(d)(1).[12] Under the coverage of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* [hereinafter "Title VII"], it is an unlawful employment practice to discriminate against an individual with respect to compensation on the basis of the individual's sex. 42 U.S.C. § 2000e–2(a)(1)[13].

3. The Equal Pay Act, although somewhat narrower in language, overlaps with the coverage of § 2000e–2(a)(1) of Title VII. *Gunther v. County of Washington,* 623 F.2d 1303, 1308–9 (9th Cir. 1979), aff'd, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). *See e.g., Shultz v. First Victoria National Bank,* 420 F.2d 648, 659 n. 26 (5th Cir. 1969). Where, as here, an "unequal pay for equal work" claim is raised under both the Equal Pay Act and Title VII, the statutes should be construed harmoniously. *Orr v. Frank R. MacNeill & Son,* 511 F.2d 166 (5th Cir. 1975), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975); *Di Salvo v. Chamber of Commerce,* 568 F.2d 593, 596 (8th Cir. 1978). *See Gunther v. County of Washington, supra,* at 623 F.2d 1311, 1313, 1321. Therefore, when a Title VII claim alleges a denial of equal pay for equal work, Equal Pay Act standards apply.

---

**11.** At first blush, it may appear that the defendant is being penalized for trying to correct inequities. Having considered all of the evidence adduced the Court finds that the defendant was only admitting the obvious and that its asserted attempts to overcome this imbalance were clearly inadequate and offered only to blunt the effect of plaintiff's case.

**12.** 29 U.S.C. § 206(d)(1) (1970) provides in pertinent part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

**13.** 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part: "It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...."

*Gunther v. County of Washington, supra* at 623 F.2d 1313, 1318. *Accord, Piva v. Xerox Corp.,* 654 F.2d 591, 598 (9th Cir. 1981); *Odomes v. Nucare, Inc.,* 653 F.2d 246, 250–251 (6th Cir. 1981); *Orahood v. Board of Trustees, Etc.,* 645 F.2d 651, 654 (8th Cir. 1981).

■ 4. Under the Equal Pay Act, plaintiff has the initial burden of establishing a *prima facie* case by proving by a preponderance of the evidence that the defendant paid her a lower salary than that paid to males for work, the performance of which, required equal skill, effort and responsibility and which was performed under similar working conditions. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974); *Marshall v. Dallas Independent School District,* 605 F.2d 191, 196 (5th Cir. 1979); *Orr v. Frank R. MacNeil & Son, supra.* Under Title VII the plaintiff also has the burden of establishing a *prima facie* case of discriminatory compensation by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ 5. Plaintiff need not show that the work she performed, and that performed by Wilson's male expediters, assistant account managers and account managers were identical; only that they were substantially equal. *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041 (5th Cir. 1973), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973). Equality is to be judged by the work actually performed on a job, not by job classification or titles. *Shultz v. Wheaton Glass Co.,* 421 F.2d 259 (3rd Cir. 1970), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); *Brennan v. City Stores, Inc.,* 479 F.2d 235 (5th Cir. 1973).

■ It was undisputed that as an expediter and assistant account manager, plaintiff performed jobs that were substantially equal to those jobs performed by similarly classified male employees of defendant. The plaintiff, therefore, established her *prima facie* case of pay discrimination under both the Equal Pay Act and Title VII, by proving that as an expediter and later as an assistant account manager she was paid less than similarly classified male employees: this was acknowledged by defendant in its proposed Conclusions of Law.

■ 6. Plaintiff also claimed that although classified as an assistant account manager, from December 1976 through January 1978, she was, in fact, performing the duties of an account manager and defendant failed to compensate her equally to male account managers. Although the plaintiff established that at the time of her resignation she was qualified to be promoted to the position of account manager, she failed to prove by a preponderance of the evidence that at some time, between December 1976 and January 1978, she was performing work which was substantially equal to work performed by account managers, either male or female. Therefore, plaintiff failed to establish a *prima facie* case that defendant discriminatorily denied her compensation comparable to that afforded account managers in violation of either the Equal Pay Act or Title VII. *Orr v. Frank R. MacNeill & Son, supra.*[14]

■ 7. Once a plaintiff has established a *prima facie* case of discriminatory compensation under the Equal Pay Act, the defendant has the burden of proving by a preponderance of the evidence that the pay differential is justified under one of the four exceptions incorporated in the Equal Pay Act. The defendant must thus establish that the differential is a result of (i) a seniority system, (ii) a merit system, (iii) a

---

**14.** In *Gunther v. County of Washington,* 623 F.2d 1303 (9th Cir. 1979) *aff'd,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). The Supreme Court upheld the Ninth Circuit's holding that a claim of sex-based wage discrimination can be maintained under Title VII even when the "equal work" requirement of the

Equal Pay Act has not been met. In the instant case, however, plaintiff's claim was brought under the theory that her job was equal to that of male account managers. Unlike the women in *Gunther,* plaintiff did not allege that her wages, in general, were discriminatorily depressed because of her sex.

system which measures earnings by quantity or quality of production, or (iv) any factor other than sex. 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan, supra* 417 U.S. at 196, 94 S.Ct. at 2229; *Salazar v. Marathon Oil Co.,* 502 F.Supp. 631, 636 (S.D.Tex.1980); *Marshall v. Georgia Southwestern College,* 489 F.Supp. 1322, 1330 (M.D.Ga.1980).

8. Typically, an employer seeking to rebut a *prima facie* case of employment discrimination, violative of Title VII, need only "articulate" a legitimate non-discriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employee carries this burden of production the plaintiff must prove by a preponderance of the evidence that the employer's reasons are a mere pretext for discrimination. *Id., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

9. The Supreme Court recently determined in *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 2249–2251, 68 L.Ed.2d 751 (1981) [hereinafter "Gunther"], that the Bennett Amendment to Title VII [15] was designed to incorporate the four affirmative defenses of the Equal Pay Act, i.e. seniority, merit, quantity or quality of production, or "any other factor other than sex," into Title VII sex-based wage discrimination claims. *Gunther, supra* at 101 S.Ct. 2251; 42 U.S.C. § 2000e-2(h). Under *Gunther,* therefore, the only justifiable pay differentials under Title VII are those attributable to the four affirmative defenses of the Equal Pay Act. *Id.* at 101 S.Ct. 2249; *Odomes v. Nucare, supra.* In the instant case, defendant argued that any differential, between plaintiff's wages and those of her male counterparts, was due to factors other than sex.

10. The Equal Pay Act standard which requires an employer to rebut a *prima facie* case of compensation discrimination with a preponderance of the evidence, differs substantially from the evidentiary burden a defendant must shoulder in a Title VII case. *See* Conclusion of Law Nos. 7 and 8 *supra.* There was no discussion in *Gunther* as to whether these differing evidentiary burdens must be reconciled when a defendant is required to rebut a *prima facie* case of unequal pay, under both the Equal Pay Act and Title VII. Nevertheless, the Supreme Court recognized that "incorporation of the [Equal Pay Act's] fourth affirmative defense ["any factor other than sex"] could have significant consequences for Title VII litigation." *Gunther, supra* at 101 S.Ct. 2248.

11. One view of the implications of *Gunther* for the *Burdine* standard of proof, is that the conventional Title VII allocation of burdens applies to unequal pay claims, however "legitimate non-discriminatory reasons" will be limited to the four affirmative defenses authorized by the Equal Pay Act. Moreover, the fourth affirmative defense of "other factors other than sex" should be interpreted consistently with Equal Pay Act decisions.[16] This Court concludes, however, that the following analysis (*see* Conclusion No. 12 *infra*) is more consistent with established legal authority.

12. It is the opinion of this Court that the burden of proof allocation discussed in *Burdine, supra* is not applicable to Title VII claims alleging denial of equal pay for equal work. Under *Gunther,* a defendant must rebut a *prima facie* case of wage discrimination under Title VII, by establishing an affirmative defense authorized by the Equal Pay Act. It is well established that these affirmative defenses must be

---

**15.** The Bennett Amendment, § 703(h) of Title VII, 42 U.S.C. § 2000e-2(h), provides in pertinent part:

... It shall not be an unlawful employment practice under ... [Title VII] for any employer to differentiate upon the basis of sex in determining the amount of wages or compensation paid or to be paid to employees ... if such differentiation is authorized by the provisions of section [206(d) of Title 29] ....

**16.** In *Gunther* the Supreme Court appeared to limit the application of the fourth affirmative defense to a "bona fide job rating system." 101 S.Ct. 2249.

**340**

established by a preponderance of the evidence. *Corning Glass Works v. Brennan, supra.* Consequently, it stands to reason that in order for a defendant to establish non-liability for sex-based wage differentials, it must prove by a preponderance of the evidence that such differentials were the result of seniority, merit, quantity or quality of production or any other factor other than sex. This conclusion is consistent with results reached in other courts since the *Burdine* and *Gunther* decisions. *E.g., Piva v. Xerox Corp., supra; Odomes v. Nucare, Inc., supra; Orahood v. Board of Trustees, Etc., supra. Also see* analysis in *Kouba v. Allstate Insurance Co.,* 523 F.Supp. 148 (E.D.Cal.1981).

▪ 13. Here, the defendant failed to sustain its burden of proving by a preponderance of the evidence, that any differentials between plaintiff Schulte's compensation and similarly situated male counterparts were due to factors other than the sex of such employees. *See* Findings of Fact Nos. 13–23. Even in applying the burden of proof standard articulated and described in *Burdine,* the Court finds plaintiff proved that the defendant's proffered non-discriminatory reasons were merely pretexts for sex discrimination.

As indicated above, the defendant does not claim that the differential plaintiff demonstrated is the result of either a seniority system, merit system, or a system which measures earnings by quantity or quality of production. Rather, defendant asserts that the differential is based upon "other factors other than sex." 29 U.S.C. § 206(d)(1).

First, the defendant here acknowledged that interim salary disparities sometime existed between male and female employees but explained that steps were taken to erase these disparities. The defendant wholly failed to produce any evidence that these differentials were based upon factors other than sex. Moreover, the defendant failed to even articulate any legitimate reason for these disparities. The Court therefore is compelled to concur with the Supreme Court, when it cited the observation

of Judge Dunaway, that one cannot say that a factor "based entirely on sex is 'based on any other factor other than sex.' Sex is exactly what it is based on." [citation omitted]. *Los Angeles Department of Water and Power v. Manhart,* 435 U.S. 702, 713, 98 S.Ct. 1370, 1377, 55 L.Ed.2d 657 (1978). These disparities apparently reflected a job market, in Houston, in which the defendant could pay women less than men for the same work. Not only is this an unlawful reason for compensation disparities under the Equal Pay Act or Title VII but it is the very reason for the enactment of the Equal Pay Act, i.e. "to remedy what was perceived to be a serious and endemic problem of [sex based] employment discrimination in private industry." *County of Washington v. Gunther,* 101 S.Ct. 2249 citing *Corning Glass Works v. Brennan,* supra 417 U.S. at 195, 94 S.Ct. at 2228.

▪ 14. Secondly, the defendant failed to establish that the wage disparity demonstrated by plaintiff resulted from a competitive market condition which forced Wilson to increase starting salaries of new employees, both male and female. *See* Finding of Fact Nos. 17–18. The evidence showed that defendant discriminated between the starting salaries of new male employees and new female employees. Utilization of a so-called "market rate" where the market rate reflects discrimination against women is an insufficient justification of wage disparities under the Equal Pay Act. *See e.g., Hodgson v. Brookhaven General Hospital, supra; Brennan v. Victoria Bank and Trust Co., supra. See also Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). *Cf. Robinson v. Lorillard Corporation,* 319 F.Supp. 835, 840 (M.D. N.C.1970) (system which preserves and perpetuates initial disparities, based on race, is unlawful), *aff'd in part, rev'd in part,* 444 F.2d 791 (4th Cir. 1971), *cert. dismissed* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 665 (1971).

15. Defendant's assertion that Larry Curtis was offered a starting salary far in excess of plaintiff because he would have

been unwilling or unable to accept employment at defendant's existing salary level, was not fully borne out by the evidence. Upon cross-examination, Curtis revealed that he had not negotiated his starting salary with the defendant; he accepted defendant's first offer. *See* Finding of Fact No. 19. *But Cf. Horner v. Mary Institute,* 613 F.2d 706 (8th Cir. 1980) (employee rejected initial offer and was subsequently offered higher salary).

16. In addition, the preponderance of the evidence shows that the factors of college education and work experience did not support the defendant's claim that salary disparities between plaintiff and male employees were due to some factor other than sex. As the Fifth Circuit noted in *Brennan v. Victoria Bank & Trust Co., supra* at 902 "if any disparity should have existed as the result of education and work experience, some of the females should have been paid more than the male[s]...." *See* Finding of Fact No. 22. Moreover, there was no evidence of any uniform base salary which the defendant increased by increments in order to accurately reflect a new employee's level of education and applicable work experience. The evidence shows that the sex of an employee more often than not was a significant factor in determining the level of compensation for the defendant's expediters and assistant account managers. This is impermissible under Title VII and the Equal Pay Act. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493; 29 U.S.C. § 206(d)(1).

▮ Moreover, to whatever small extent the college education factor may have been used, the Court finds that factor does not meet the test of job-relatedness set forth in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). An employer may not rebut *prima facie* liability by purporting to rely on criteria which measures attributes unrelated to probable job performance. *See Griggs v. Duke Power Co., supra; Johnson v. Uncle Ben's Inc.,* 628 F.2d 419 (5th Cir. 1981). Although Ann Gray testified that a college education

while not required, was preferred, defendant failed to establish that a college degree was related to probable job performance. In fact, neither Gordon Gamble, plaintiff's supervisor nor Mr. Donovon, Carl Alexander's predecessor as Vice President of the International Division of Wilson, had a college education.

.17. The preponderance of the evidence reveals that the defendant's salary structure was vague, subjective, and not based upon any company approved guidelines. Apparently, an employee's salary was based on what Carl Alexander and Harold Jackson felt an employee was worth. It is well established that such salary determination procedures are highly susceptible to abuses of discrimination and this Court concludes such an abuse occurred at Wilson Industries, in violation of Title VII and the Equal Pay Act. *See Pittman v. Hattiesburg Mun. Separate Sch. Dist.,* 644 F.2d 1071, 1074 (5th Cir. 1981); *Rowe v. General Motors Corp.,* 457 F.2d 348, 359 (5th Cir. 1972).

▮ 18. Even assuming defendant's above proffered explanations were tenable, the evidence clearly demonstrated that the wage differential between plaintiff Schulte and her male counterparts was based in part on the employee's sex. *See* Conclusion of Law No. 13. Wage differentials are permitted when it can be shown that they are based on factors other than sex, however, such an exception is not established "unless the factor of sex provides no part of the basis for the wage differential. 29 C.F.R. § 800.142." *Marshall v. J. C. Penney Co., Inc.,* 464 F.Supp. 1166, 1195 (N.D.Ohio 1979). *See also McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1981); *Pittman v. Hattiesburg Mun. Separate Sch. Dist.,* 644 F.2d 1071, 1076 (5th Cir. 1981).

19. Even assuming the truth of defendant's claims noted in Conclusion of Law Nos. 14–16, the evidence adduced at trial compels this Court to conclude that it is impossible to distinguish the portion of the wage differential related to the prohibited factor of sex from the portion related to factors "other than sex." The Court con-

cludes, therefore, that the plaintiff has sustained her burden of proof in establishing a violation of 42 U.S.C. § 2000e *et seq.;* and 29 U.S.C. § 201 *et seq.,* with respect to the defendant's practice of discriminatorily compensating plaintiff for performing the same duties and responsibilities as male expediters and assistant account managers.

### B. Promotional Claims

■ 20. Although there are no inflexible formulas, the Supreme Court in *Texas Dep't of Community Affairs v. Burdine, supra,* 101 S.Ct. at 1094, described an appropriate model for establishing a *prima facie* case of promotional discrimination under Title VII.

> The plaintiff must prove by a preponderance of the evidence that she applied for an available position, for which she was qualified, but was rejected under circumstances which gave rise to an inference of unlawful discrimination.[17]

Plaintiff Schulte has presented no evidence to this Court that an account manager position was available during the period in question for which she applied or which she desired but for which she was rejected or passed over. Plaintiff failed to present any evidence that she even told defendant she wanted a position as an account manager. The nature of plaintiff's complaints to her supervisors was that she was discriminatorily compensated.

21. Plaintiff has failed to meet an initial burden of presenting a *prima facie* case of promotional discrimination as required by *Texas Dep't of Community Affairs v. Burdine, supra;* and *McDonnell Douglas Corp. v. Green, supra.*

### C. Constructive Discharge Claim

22. Plaintiff Schulte claims she was constructively discharged by defendant in violation of her Title VII rights. In *Young v. Southwestern Savings & Loan Ass'n.,* 509 F.2d 140, 143 (5th Cir. 1975), the Fifth Cir-

cuit enunciated the standard for determining whether an employee has been constructively discharged.

> The general rule is that of the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct therein as if it had formally discharged the aggrieved employee.

*Accord, Pittman v. Hattiesburg Mun. Separate Sch. Dist., supra* at 1077; *Miller v. State Board of Barber Examiners,* 615 F.2d 650, 652 (5th Cir. 1980).

■ 23. In *Bourgue v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir. 1980) the Fifth Circuit further explained that a constructive discharge will be found where, "working conditions would have been so difficult that a reasonable person in the employee's shoes would have felt compelled to resign." The employee, however, does not have to prove it was the employer's purpose to force the employee to resign. *Id.* The *Bourgue* case recognizes that discriminatory compensation practices are relevant to a constructive discharge determination, however, "unequal pay alone does not constitute such an aggravated situation that a reasonable employee would be forced to resign." *Id.* at 66.

■ 24. In applying the foregoing principles, the Court herein concludes that defendant Wilson did not deliberately make plaintiff's working conditions so intolerable that she was forced into an involuntary resignation and further concludes that Ms. Schulte's working conditions were not so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign. *See* Finding of Fact Nos. 40–43. Accordingly, the Court finds that defendant did not constructively discharge

---

**17.** In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 at 802, 93 S.Ct. 1817 at 1824, 36 L.Ed.2d 668, the elements of a *prima facie* case were established as requiring the plaintiff to show: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualification, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

plaintiff in violation of Title VII of the Civil Rights Act, 1964, as amended.

### D. Damages

■ 25. A plaintiff who proves a violation of Title VII is entitled to an award of back pay for a period of two years. 42 U.S.C. § 2000e–5(g). In actions brought pursuant to the Equal Pay Act, an employer is liable for back pay for a period of two years, unless the plaintiff proves a willful violation of the Act, in which case the liability is extended to three years. 29 U.S.C. § 255. To establish a willful violation, the plaintiff must establish that the defendant knew of the possible applicability of the Act to the conduct eventually held to be discriminatory. *Brennan v. Heard,* 491 F.2d 1, 3 (5th Cir. 1974); *Brennan v. J. M. Fields, Inc.,* 488 F.2d 443, 448 (5th Cir. 1973), *cert. denied,* 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974); *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir. 1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). "Stated most simply", says the Fifth Circuit, "we think the test should be: Did the employer know the [statute] was in the picture?" *Coleman v. Jiffy June Farms, Inc., supra,* 458 F.2d at 1142. According to the Fifth Circuit, however, "actual awareness of the law is unnecessary to establish willfulness. Knowledge is imputed . . ." *Marshall v. A & M Consolidated Independent School District,* 605 F.2d 186, 191 (5th Cir. 1979).

■ 26. Here, the Court's earlier finding compels the conclusion that Wilson knew "the [Equal Pay Act] was in the picture" during the period in question. (See Finding of Fact No. 39) Accordingly, the Court concludes defendant's violations of the Equal Pay Act were "willful," and the three year liability period applies. 29 U.S.C. § 255. *See Brennan v. Heard, supra; Brennan v. J. M. Fields, Inc., supra.*

■ 27. A plaintiff who proves a violation of the Equal Pay Act is entitled to an additional award of liquidated damages equal to the back pay award. 29 U.S.C. § 216(b). If an employer demonstrates he acted in good faith, however, the court may deny the award of liquidated damages. 29 U.S.C. § 260. The standard applied in the Fifth Circuit is stated in *Barcellona v. Tiffany English Pub,* 597 F.2d 464 (5th Cir. 1979):

> We understand the language of [29 U.S.C. § 260] to impose upon the employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.

*Id.* at 468. The Fifth Circuit has stated further that an employer acts in good faith if it "did not believe it was violating the Act." *Weisel v. Singapore Joint Venture, Inc.,* 602 F.2d 1185, 1191 n. 18 (5th Cir. 1979). In the instant case, this Court is persuaded that defendant did not believe it was violating the Equal Pay Act and thus defendant is not liable for liquidated damages.

28. Since the plaintiff did not prevail on her constructive discharge claim, there is no liability to plaintiff beyond the date of termination, January 13, 1978.

■ 29. Prejudgment interest on the back pay award is not recoverable under 28 U.S.C. § 216(b). *Barcelona v. Tiffany English Pub, Inc., supra* at 469; *Foremost Dairies, Inc. v. Ivey,* 204 F.2d 186, 190 (5th Cir. 1953). Nevertheless, plaintiff is entitled to recover such interest under Title VII. *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 263 (5th Cir. 1974), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1974).

30. Plaintiff is entitled to appropriate equitable relief and according to the guidelines set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), attorney's fees. 42 U.S.C. § 2000e–5(k), 29 U.S.C. § 216(b).

31. The Court concludes none of plaintiff's Title VII claims were frivolous or unreasonable. Consequently, defendant is not entitled to attorney's fees under 42

U.S.C. § 2000e–5(k). *Christianburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

32. The parties will have thirty (30) days to submit to the Court an agreed judgment outlining the relief to be granted in the present case. If they are unable to reach an agreement by that time, a hearing to determine the appropriate relief will be set.

In the event that any of the foregoing Findings of Fact also constitute Conclusions of Law, they are adopted as such. In the event that any of the foregoing Conclusions of Law also constitute Findings of Fact, they are adopted as such.

The Clerk shall file these Findings and provide a true copy to counsel for all parties.